**Elizabeth VERMETT, Plaintiff,**

**v.**

**Gerald L. HOUGH, Director of the Michigan Department of State Police; The Michigan Department of State Police; Harold Morrison, Captain; Lt. James Fries; Lt. James Haydon; Lt. William Tomczyk; Lt. Francisco Deon; Sgt. Earl Raczkowski; Sgt. Thomas Jefferson; and all officers and employees of the Michigan Department of State Police; and David R. Haire, individually and as a trooper in the Michigan Department of State Police, Defendants.**

**No. G 82-55.**

United States District Court, W.D. Michigan, S.D.

March 8, 1984.

Marjorie Schaafsma, Evanston, Ill., Jean L. King, Ann Arbor, Mich., for plaintiff.

Deborah Devine, Asst. Atty. Gen., State Affairs Div., Lansing, Mich., for defendants.

## OPINION ON DEFENDANTS' MOTION TO DISMISS COMPLAINT OR FOR SUMMARY JUDGMENT

ENSLEN, District Judge.

This case involves alleged sex based discrimination in employment; specifically, allegations of sexual harassment, sex discrimination, and constructive discharge brought by a female State Trooper against the Michigan Department of State Police and named officials and police officers. Plaintiff's Complaint, filed February 5, 1982 and amended September 19, 1983, is in seven counts. It states that it is brought to enforce civil and constitutional rights pursuant to 42 U.S.C. § 1983, the Fourteenth Amendment to the United States Constitution, Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e *et seq.*), and the Michigan Elliott-Larsen Civil Rights Act (M.C.L.A. 37.2101 *et seq.*). Counts sounding in retaliation, breach of contract (settlement agreement and consent agreement), assault and intentional infliction of emotional distress are also included. Jurisdiction in this Court is purported to be based upon 28 U.S.C. § 1331, 28 U.S.C. § 1343(3), 28 U.S.C. § 1343(4), and this Court's pendent jurisdiction over state law claims. Injunctive and monetary relief are requested. Presently before the Court is Defendants' Motion to Dismiss Complaint or for Summary Judgment.

### *I. Factual Background*

Plaintiff, in her Complaint, recites the following chronology of events leading to the filing of this lawsuit:

She was an employee of the Michigan Department of State Police (the Department), having been originally hired on or about February 19, 1978. Following completion of recruit training, Plaintiff was assigned as a trooper to the Sault Ste. Marie Post (Sault) on or about May 26, 1978. On approximately February 6, 1979, Plaintiff was discharged from her employment with the Department. She subsequently filed a complaint with the Michigan Department of Civil Rights (MDCR) and the Federal Equal Employment Opportunity Commission (EEOC), complaining that the Department and its employees had discriminated against her on the basis of sex, in violation of Title VII and the Elliott-Larsen Civil Rights Act. On approximately May 13, 1979, Plaintiff was reinstated and reassigned to the Fourth Squad at the Northville Post (Northville), where she

worked under the supervision of Defendants Raczkowski and Jefferson.

During the course of her employment at Northville, it is alleged that Plaintiff was repeatedly subjected to offensive verbal and physical conduct by Defendant Trooper Haire and commanding officers. This conduct was, Plaintiff contends, intentional, deliberate, and purposeful discrimination and harassment based on her sex. She asserts that this conduct unreasonably interfered with her work and created an unsuitable work environment. As a proximate result, Plaintiff states that she suffered depression, mental anguish, emotional distress, humiliation, embarrassment, outrage, loss of professional standing and status, impairment of earning capacity, and loss of capacity for enjoyment of life.

On or about June 19, 1981, Plaintiff filed a complaint with the MDCR and the EEOC complaining of unlawful employment practices and conduct. She filed a second complaint on July 30, 1981, complaining of unlawful employment practices and acts of retaliation. Plaintiff has requested that the EEOC issue a right to sue letter. The instant lawsuit ensued.

### *II. Standard of Review*

Defendants bring this motion pursuant to Federal Rule of Civil Procedure (FRCP) 12(b)(6) (dismissal for failure to state a claim upon which relief can be granted), and in the alternative for summary judgment pursuant to Rule 56 (no genuine issue as to any material fact). Since some of the issues involve matters outside of the pleadings, while others do not, the standard of review for both types of motions will be outlined.

#### *A. Motion to Dismiss*

Defendants assert that their Motion to Dismiss is brought pursuant to FRCP 12(b)(6). However, this provision applies only when a Motion to Dismiss for Failure to State a Claim is made before a responsive pleading has been filed. Since Defendants have filed answers to both Plaintiff's original and amended complaints, this motion will be treated as if brought pursuant to FRCP 12(c) (Motion for Judgment on the Pleadings). *See* FRCP 12(h)(2). The same standard will be applied for granting the appropriate relief as would have been employed had the motion been brought properly under Rule 12(b)(6). *See* Wright & Miller, *Federal Practice & Procedure,* Vol. 5 § 1367.

■ In applying Rule 12(b)(6), the Court is to take as true the allegations of Plaintiff's Complaint and then determine whether the statements are sufficient to make out a right to relief. The issue is not whether the Plaintiff will ultimately prevail, but whether she is entitled to offer evidence to support her claims. Because dismissal on the basis of a failure to state a claim is disfavored, the standard by which the rule is applied is that:

> in appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46 [78 S.Ct. 99, 102, 2 L.Ed.2d 80] (1957) (footnote omitted).

The question, therefore, is whether in the light most favorable to Plaintiff, and with every doubt resolved in her behalf, the Complaint states any valid claim for relief. Wright & Miller, *supra* at § 1357. Motions to dismiss complaints brought under the civil rights acts are, of course, scrutinized with special care. *See, Lucarell v. McNair,* 453 F.2d 836 (CA 6 1972); *Westlake v. Lucas,* 537 F.2d 857 (CA 6 1976).

#### *B. Motion for Summary Judgment*

In considering those portions of Defendants' motion which direct the Court to materials outside the pleadings, the standard of review applicable to Motions for Summary Judgment will be applied. *See* FRCP 12(b) and (c) and FRCP 56.

To warrant the grant of summary judgment, the moving party bears the burden of establishing the non-existence of any genuine issue of fact that is material to a judgment in its favor. *Adickes v. S.H.*

*Kress & Company,* 398 U.S. 144, 147, 90 S.Ct. 1598, 1602, 26 L.Ed.2d 142 (1970); *United States v. Articles of Device ... Diapulse,* 527 F.2d 1008, 1011 (CA 6 1976). If no genuine issue as to any material fact is established, the moving party is entitled to judgment as a matter of law. *Chevez v. Noble Drilling Company,* 567 F.2d 287 (CA 5 1978); *Irwin v. United States,* 558 F.2d 249 (CA 5 1977).

In determining whether or not there are issues of fact requiring a trial, "the inferences to be drawn from the underlying facts contained in the [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Bohn Aluminum & Brass Corporation v. Storm King Corporation,* 303 F.2d 425 (CA 6 1962). Even if the basic facts are not disputed, summary judgment may be inappropriate when contradictory inferences may be drawn from them. *United States v. Diebold, supra; EEOC v. United Association of Journeymen & Apprentices of the Plumbing & Pipefitting Industry, Local 189,* 427 F.2d 1091, 1093 (CA 6 1970). In making this determination, the Court must make reference to the entire record and all well pleaded allegations are to be accepted as true. *Dayco Corporation v. Goodyear Tire and Rubber Company,* 523 F.2d 389 (CA 6 1975); *Holmes v. Insurance Company of North America,* 288 F.Supp. 325 (D.C.Mich.1968).

It is with these principles in mind that I will now address the issues involved herein.

### *III. Count I—Title VII*

Defendants raise several issues regarding Plaintiff's Title VII claim. They will be discussed *seriatim.*

#### *a. Statutory Requirements for Bringing a Title VII Action*

1. *Whether Plaintiff's Title VII Claim was the Subject of a Timely Filed Charge with Either the EEOC or MDCR*

42 U.S.C. § 2000e–5(e) provides:

> A charge under this section shall be filed within one hundred eighty days after the alleged unlawful employment practice occurred ..., except that in the case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice ..., such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred,....

The United States Supreme Court has recently held that the timely filing of a charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but rather a requirement that, "like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982). Nevertheless, Plaintiffs are required to prove that they have satisfied the conditions precedent to a Title VII action. *See Jackson v. Seaboard Coast Line R. Company,* 678 F.2d 992, 1010 (CA 11 1982).

In determining the timeliness of Plaintiff's EEOC complaint, the Court must first identify precisely the alleged unlawful employment practice of which she complains. *Delaware State College v. Ricks,* 449 U.S. 250, 257, 101 S.Ct. 498, 503, 66 L.Ed.2d 431 (1980). Plaintiff contends that the individual events specified in her Complaint are all related, in that they are part of the "continuing environmental nature" of sexual harassment and discrimination in the Department. Since there is this nexus between the discriminatory activity and work environment liability, Plaintiff contends, the fact that the last specific act of alleged discrimination occurred within 180 days of the filing of the EEOC charge is sufficient to bring all of the acts alleged properly within the purview of this lawsuit. Having carefully read the allegations in the

Complaint, I believe there is merit in Plaintiff's argument.

In *Held v. Gulf Oil Company,* 684 F.2d 427 (CA 6 1982), the Sixth Circuit affirmed a trial court decision wherein it was held that the Plaintiff had been subjected to serious and continuous sex discrimination and that, since there was evidence that the discriminatory acts continued throughout her period of employment, the employee's action was not time barred. In addressing the timeliness question, the court stated:

> [T]he Supreme Court of the United States in *United Air Lines v. Evans,* 431 U.S. 553, 558 [97 S.Ct. 1885, 1889, 52 L.Ed.2d 571], ... (1977) stated:
>
> * * * * * *
>
> A discriminatory act which is not made the basis of a timely charge is the legal equivalent of a discriminatory act which occurred before the statute was passed.... separately considered, it is merely an unfortunate event in history which has no present legal consequences.
>
> Plaintiff's termination was effective December 15, 1977, and her administrative claim was filed with the EEOC on February 16, 1978. Thus, any incident occurring more than 180 days prior to February 16, 1978, is legally insignificant. This result, however, does not obtain where subsequent identifiable acts of discrimination occur within the critical time period and are related to the time-barred incident.... In [*Woodward v. Virginia Board of Bar Examiners,* 420 F.Supp. 211 (ED Va 1976); *aff'd* 598 F 2d 1345 (CA 4 1979)], the District Court pointed out:
>
> When a person challenges continuous discriminatory conduct rather than any single discriminatory act, the 180 day limitation period of Title VII ... [is] not operative.
>
> 420 F Supp at 214, n. 3.
>
> * * * * * *
>
> Thus, if the discriminatory acts commenced prior to the 180 day period and there was a continuous pattern of discrimination that continued into the 180 day period, plaintiff may still maintain her action even though single discriminatory acts prior to the 180 days period are barred. *Held, supra* at 430.

*See also, Coley v. Consolidated Rail Corporation,* 561 F.Supp. 645 (E.D.Mich.1982) and *Henson v. City of Dundee,* 682 F.2d 897 (CA 11 1982) for discussions regarding the creation of a hostile or offensive "work environment" by continuous acts of sexual harassment.

In the instant case, Plaintiff is alleging continuous acts of sexual harassment and discrimination throughout her period of employment. I believe she should be allowed to attempt to prove her allegations. Should she be unable to support her contention that the harassment and discrimination alleged is of an on-going and continuous type, Defendants will be free to renew their § 2000e–5(e) timeliness motion at trial. This aspect of Defendants' Motion to Dismiss is DENIED.

*2. Whether Plaintiff's Failure to Name Any Individuals in the Administrative Charge Entitles Defendants to Dismissal of All the Named Individuals in the Title VII and Retaliation Counts of the Complaint*

The named individual Defendants seek dismissal of all Title VII claims against them on grounds that they were not named as parties in the EEOC charges. In support of their position, the individual Defendants rely upon 42 U.S.C. § 2000e–5(f)(1), which provides that after notice of Right to Sue, "a civil action may be brought against the respondent named in the charge ... by the person claiming to be aggrieved...."

The requirement of having named a party in the administrative charge before filing a civil suit against that party serves two purposes:

> First, it notifies the charged party of the asserted violation. Secondly, it brings the charged party before the EEOC and permits effectuation of the Act's primary goal, the securing of voluntary compli-

ance with the law. *EEOC v. MacMillan Bloedel Containers,* 503 F 2d 1086, 1092 (CA 6 1974), citing *Bowe v. Colgate-Palmolive Company,* 416 F 2d 711, 719 (CA 7 1969).

Although § 2000e–5(f)(1) has generally been interpreted to mean that a charge must be filed against the party with the EEOC before a civil action may be commenced against that party, *see EEOC v. MacMillan Bloedel Containers, supra; Evans v. Sheraton Park Hotel,* 503 F.2d 177, 181 (CA D.C.1974); *Mickel v. State Employment Service,* 377 F.2d 239 (CA 4 1967); *Williams v. General Foods Corporation,* 492 F.2d 399 (CA 7 1974), courts have been liberal in their interpretation of this provision. *See, e.g., Glus v. G.C. Murphy Company,* 562 F.2d 880 (CA 3 1977); *Eggleston v. Chicago Journeyman Plumbers, Etc.,* 657 F.2d 890 (CA 7 1981). As explained in *Evans, supra* at 183:

> We do not believe that the procedures of Title VII were intended to serve as a stumbling block to the accomplishment of the statutory objective. To expect a complainant at the administrative stage, usually without aid of counsel, to foresee and handle intricate procedural problems which could arise in subsequent litigation, all at the risk of being cast out of court for procedural error, would place a burden on the complainant which Congress neither anticipated nor intended.

Recognizing the advisability of adopting a liberal approach to the enforcement of § 2000e–5(f)(1), the court in *Glus, supra* at 888, announced a four-part test to determine whether failure to strictly comply with the section should be excused:

> (1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; (2) whether, under the circumstances, the interests of a named are so similar as the unnamed party's that for the purposes of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; (3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; (4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party. *See also, Eggleston, supra* at 908.

Under this test, "each prong must be carefully evaluated in light of both Title VII's remedial purposes as well as the interests of the parties." *Eggleston, supra* at 908.

Under the circumstances involved in this case, it would appear that Plaintiff could easily have ascertained the role of Defendants prior to filing her administrative complaints. It is unclear, however, whether there is reason to believe that the failure to specifically name Defendants was due to some representation which would fall within the fourth prong of the test.

I am of the opinion that the factors set out in the second and third prongs outweigh the other factors and call for denial of this aspect of Defendants' motion. The interests of the individual Defendants are substantially similar to those of the Department. In addition, it does not appear that the individual Defendants have been prejudiced by not having been specifically named before the EEOC—especially since their interests would or could have been protected by the Department. For these reasons, this portion of Defendants' Motion to Dismiss is DENIED.

### 3. *Whether Some of the Allegations in Plaintiff's Complaint Were Not the Basis of an Administrative Charge and, Therefore, Should be Dismissed*

Defendants seek dismissal of two paragraphs of the Title VII count of Plaintiff's Complaint, on grounds that the administrative complaint filed with the MDCR and the EEOC on June 19, 1981 did not include these charges.

As with the other preconditions to a civil suit alleging a Title VII violation, the requirement that a Title VII cause of action

be based only upon specific charges made in the administrative complaint has been liberally construed in Plaintiff's favor. *See, e.g., EEOC v. Bailey Company, Inc.,* 563 F.2d 439 (CA 6 1977); *Gerlach v. Michigan Bell Telephone Company,* 501 F.Supp. 1300 (E.D.Mich.1980); *McBride v. Delta Air Lines, Inc.,* 551 F.2d 113 (CA 6 1977), *vac'd on other grounds sub nom Delta Air Lines v. McBride,* 434 U.S. 916, 98 S.Ct. 387, 54 L.Ed.2d 273 (1977). Thus, it has been held that a Title VII cause of action may be based not only upon the specific charge made in the administrative complaint, "but also upon any kind of discrimination like or related to the charge's allegations, limited only by the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charge of discrimination." *Fellows v. Universal Restaurants, Inc.,* 701 F.2d 447, 451 (CA 5 1983). *See also, EEOC v. Bailey, supra; Gerlach, supra; Sanchez v. Standard Brands, Inc.,* 431 F.2d 455 (CA 5 1970).

The Sixth Circuit has articulated two reasons for this rule:

> The first reason is that the rule permits an effective functioning of Title VII when the persons filing complaints are not trained legal technicians.
>
> * * * * * *
>
> The second reason for limiting the scope of the EEOC complaint to the EEOC investigation that can be reasonably expected to grow out of the private party's charge is explained in *Sanchez v. Standard Brands, Inc., supra,* 431 F.2d at 466.
>
> > The logic of this rule is inherent in the statutory scheme of Title VII. A charge of discrimination is not filed as a preliminary to a lawsuit. On the contrary, the purpose of a charge of discrimination is to trigger the investigatory and conciliatory procedures of the EEOC. Once a charge has been filed, the Commission carries out its investigatory function and attempts to obtain voluntary compliance with the law. Only if the EEOC fails to achieve voluntary compliance will the matter even become the subject of court action. Thus it is obvious that the civil action is much more intimately related to the EEOC investigation than to the words of the charge which originally triggered the investigation.
>
> *EEOC v. Bailey, supra* at 446–447.

Applying this rule to the circumstances herein, I am of the opinion that the ambit of investigation Plaintiff's complaint might "reasonably" have expected to stimulate encompasses the claims made in the two disputed paragraphs of the Title VII count. The paragraphs in question appear to refer to the events surrounding Plaintiff's employment and termination at Sault. Plaintiff's June 19, 1981 MDCR and EEOC complaint refers specifically to the March 5, 1979 EEOC complaint involving the Sault events. It is certainly reasonable to conclude that the EEOC investigation following the June 19, 1981 complaint would involve the March 5, 1979 complaint and the events leading to its having been filed. Applying the liberal approach to the permissible scope of judicial claims, this aspect of Defendants' Motion to Dismiss is DENIED.

### *IV. Count III—42 U.S.C. § 1983*

#### *1. Stating a Claim Cognizable under 42 U.S.C. § 1983*

##### *a. Whether a Violation of Title VII May Not be Asserted as the Basis of a § 1983 Action*

42 U.S.C. § 1983 is a remedial rather than a jurisdictional statute, involving circumstances where a party alleges she has been deprived of a right, privilege, or immunity secured by the Constitution and laws, by a person acting "under color of" state law. *Chapman v. Houston Welfare Rights Organization,* 441 U.S. 600, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979).

Plaintiff alleges in Count III of her Complaint that the acts and omissions outlined in the Title VII count, which she "repeats and realleges" in this Count, deprived her of equal protection of the law as guaran-

teed by the Fourteenth Amendment to the United States Constitution. Plaintiff further alleges that Defendants failed, neglected, and refused to afford her equal terms and conditions of employment with males similarly situated. She contends that she was treated unfairly and unequally and deprived of rights guaranteed by the Constitution, pursuant to a governmental plan and practice of the Department, in violation of § 1983. The acts of Defendants are said to have been intentional and with willful and reckless disregard for the rights and sensibilities of Plaintiff.

Defendants argue that Plaintiff's § 1983 Count should be dismissed because it is an attempt by Plaintiff to bring a damage action under 42 U.S.C. § 1983 to redress violations of rights created by Title VII. I find Defendants' argument untenable.

The Supreme Court has clearly stated that, "despite Title VII's range and its design as a comprehensive solution for the problem of invidious discrimination in employment, the aggrieved individual clearly is not deprived of other remedies [she] possessed and is not limited to Title VII in [her] search for relief." *Johnson v. Railway Express Agency,* 421 U.S. 454, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1975). Plaintiff herein has, based on the same facts, brought an action under Title VII and an action under 42 U.S.C. § 1983. The § 1983 action, however, is not based on the provisions of Title VII. Rather, it is specifically based upon the Fourteenth Amendment to the United States Constitution. I have found no basis, and Defendants have presented me with none, upon which to conclude that Plaintiff cannot assert these separate claims.

In *Whiting v. Jackson State University,* 616 F.2d 116 (CA 5 1980), the plaintiff sought relief for an alleged racially discriminatory discharge under 42 U.S.C. § 1981, 42 U.S.C. § 1983 and Title VII. The Fifth Circuit did not question this practice. In fact, the court stated (after outlining the elements of Title VII and § 1981 causes of action):

> Section 1983 serves as a basis for relief for violations of federal law under color of state law. Insofar as it is used as a parallel remedy for transgression of section 1981 and section 706 of Title VII rights, the elements of the causes of action do not differ from those discussed above. The only other federal law that [plaintiff] suggests has been trammeled by [defendant's] actions is the fourteenth amendment ... [He] claims his termination on racial grounds offends equal protection. *Id.* at 121.

This portion of Defendants' Motion to Dismiss is DENIED.

*b. Whether Dismissal is Proper Because Plaintiff has Failed to Properly Plead a § 1983 Claim*

Defendants argue that Count III fails to state a claim under § 1983 because Plaintiff failed to specifically include the words "under color of state law". This argument deserves little consideration.

While it is certainly true that, in order to state a cause of action under § 1983, a plaintiff must allege that some person deprived her of a federal right, and that the person acted under color of state or territorial law, *see Gomez v. Toledo,* 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980); *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), it is inconceivable to me that a plaintiff may be held to have failed to state a claim under that statute merely because she failed to recite the magic words "under color of state law". Indeed, case law indicates quite clearly that courts are concerned with whether the conduct alleged by a plaintiff was actually committed under color of state law, rather than whether the correct buzz words were used in the complaint. *See, e.g., Parratt, supra; Kurzawa v. Mueller,* 545 F.Supp. 1254 (E.D.Mich.1982).

The Court has examined Plaintiff's Complaint, and it is readily apparent that Plaintiff is alleging conduct by Defendants committed under color of state law. While I could liberally grant Plaintiff the opportunity to amend her Complaint to insert the words "under color of state law", such

would serve no purpose except to delay these proceedings. The Court being unwilling to dismiss Plaintiff's § 1983 claims on the technicality embraced by Defendants, this aspect of their Motion to Dismiss is DENIED.

c. *Whether the Defendant, Michigan Department of State Police, is Not a Person Within the Meaning of 42 U.S.C. § 1983, and is Immune from Suit*

d. *Whether the Eleventh Amendment to the United States Constitution Provides Immunity from Suits for Damages Against the State of Michigan as Well as its Various Departments and Agents*

Plaintiff has failed to address either of these issues. They have been combined for purposes of this Opinion.

The Eleventh Amendment to the United States Constitution provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

The Eleventh Amendment is generally recognized as a bar to suits against a State unless specifically overriden by act of Congress, or unless the State has consented to be sued. *See Alabama v. Pugh,* 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978); *Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976); *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). The Eleventh Amendment's bar extends to suits against departments or agencies of the State. *Alabama, supra; Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979); *Laskaris v. Thornburgh,* 661 F.2d 23 (CA 3 1981). When suit is brought against state officials, the question becomes whether that action is a suit against the State itself. If the State is the "real, substantial party in interest," the Eleventh Amendment bars suit. *Ford Motor Company v. Treasury,* 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945). Thus, where the action is in effect one seeking money damages from the State, relief sought nominally against a state official is, in reality, against the State, because the decree would operate against the latter. *Hawaii v. Gordon,* 373 U.S. 57, 83 S.Ct. 1052, 10 L.Ed.2d 191 (1963); *Ford Motor Company, supra. See also Schueur v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). The Eleventh Amendment's jurisdictional bar applies regardless of whether the suit is for damages or injunctive relief. *Alabama, supra; Pennhurst State School and Hospital v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984).

An exception to the general rule was stated in *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), where the court held that a suit challenging the constitutionality of a state official's action is not one against the State. However, this ruling was later limited somewhat by the court's ruling in *Edelman, supra,* that, in a suit against a state official alleging a violation of federal law, a federal court may award prospective injunctive relief, but not retroactive monetary relief.

Although Title VII has been held to be a congressional override of the State's Eleventh Amendment immunity, § 1983 is not. *See Fitzpatrick, supra; Quern, supra.* Thus, when a § 1983 claim is brought directly against a State or one of its departments or agencies, the Eleventh Amendment bars this Court from granting any relief on that claim. *See Alabama, supra; Pennhurst, supra.* When a lawsuit is brought under § 1983 against state officials alleging a constitutional claim, this Court is barred from awarding damages against the state treasury. *See Quern, supra; Pennhurst, supra; Edelman, supra.*

In the instant case, Plaintiff has brought a § 1983 claim alleging a constitutional violation against the Michigan Department of Police and numerous officers of that Department. The officers named in

this Count are being sued in their official capacity. Damages and injunctive relief are sought. Any monetary award will be paid from public funds in the state treasury. Therefore, applying the principles outlined above, Defendants' Motion to Dismiss Plaintiff's § 1983 claim against the Michigan Department of Police is GRANTED. Defendants' Motion to Dismiss Plaintiff's § 1983 claim against the various officers named is GRANTED as to any request for monetary damages; it is DENIED as to any request for prospective declaratory or injunctive relief against these officers.

Moreover, neither a state nor its departments and agencies are "persons" within the meaning of § 1983, and thus are not subject to suit under this statute. *Quern, supra* at 343, 99 S.Ct. at 1146; *Ruiz v. Estelle,* 679 F.2d 1115, 1137 (CA 5 1982), *modified on other grounds,* 688 F.2d 266 (CA 5 1982); *Clark v. Michigan,* 498 F.Supp. 159, 161 (E.D.Mich.1980).

As to the remaining Defendants and their argument that liability cannot be imposed upon a *respondeat superior* theory, I believe granting dismissal of Plaintiff's remaining § 1983 claims on this basis is, at this stage in these proceedings, premature. *See, e.g., Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1973).

### *V. Pendent Jurisdiction*

#### *a. The Eleventh Amendment and Pendent State Claims*

A recent Supreme Court decision, not cited by the parties herein, raises an interesting issue as to the pendent state claims Plaintiff seeks to assert. *Pennhurst, supra,* involved a controversy over conditions of care at the Pennhurst State School and Hospital, a Pennsylvania institution for the care of the mentally retarded. After extensive trial and appellate court proceedings, prospective injunctive relief had been awarded on the basis of Pennsylvania's Mental Health and Mental Retardation Act of 1966.

Justice Powell, writing for the majority, found reversal appropriate on grounds that the Eleventh Amendment prohibits federal courts from ordering state officials to conform their conduct to state law. Although the claim that defendants had violated state law in carrying out their official duties at Pennhurst was one against the state, the principles of *Ex Parte Young* and *Edelman* were inapplicable because the rationale behind those decisions—the vindication of the supreme authority of federal law—is not present when a federal court grants either prospective or retroactive relief against state officials on the basis of state law. As stated by the court:

> [I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the principles of federalism which underlie the Eleventh Amendment.
>
> * * * * * *
>
> The reasoning of our recent decisions on sovereign immunity thus leads to the conclusion that a federal suit against state officials on the basis of state law contravenes the Eleventh Amendment when—as here—the relief sought and ordered has an impact directly on the state itself. *Id.,* 465 U.S. at ——, ——, 104 S.Ct. at 911, 917.

The court went on to reject plaintiffs' argument that the doctrine of pendent jurisdiction somehow displaces the Eleventh Amendment's limitation on federal jurisdiction, stating:

> This constitutional bar applies to pendent claims as well... [P]endent jurisdiction is a judge-made doctrine of expediency and efficiency derived from the general Art. III language conferring power to hear all "cases" arising under federal law or between diverse parties... The Eleventh Amendment should not be construed to apply with less force to this implied form of jurisdiction than it does to the explicitly granted power to hear federal claims.
>
> * * * * * *

If we were to hold otherwise, a federal court could award damages against a State on the basis of a pendent claim. Our decision in *Edelman v. Jordan, supra,* makes clear that pendent jurisdiction does not permit such an evasion of the immunity guaranteed by the Eleventh Amendment.

* * * * * *

In sum, ... neither pendent jurisdiction nor any other basis of jurisdiction may override the Eleventh Amendment. A federal court must examine each claim in the case to see if the court's jurisdiction over that claim is barred by the Eleventh Amendment. We concluded above that a claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment.... We now hold that this principle applies as well to state-law claims brought into federal court under pendent jurisdiction. (citations and footnote omitted). *Id.* at ——-——, 104 S.Ct. at 919.

Applying the rule of *Pennhurst* and the cases cited earlier to the pendent state claims asserted by Plaintiff, I am constrained to hold that this Court is without jurisdiction to consider all of Plaintiff's asserted pendent state claims against Defendants, with the exception of the claim in Count VI against Defendant Haire, individually, in tort for assault and intentional infliction of emotional distress. Therefore, Plaintiff's claims for violation of the Elliott-Larsen Civil Rights Act, Breach of Settlement Agreement (made only against the Department), Retaliation (except as to Title VII and 42 U.S.C. § 1983), and Breach of Consent Agreement (made only against the Department), are DISMISSED.

*b. Whether Pendent Jurisdiction is Inappropriate for Plaintiff's Remaining State Claim*

The seminal case guiding this Court in the consideration of whether the exercise of pendent jurisdiction is appropriate is *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). There it was observed that, under the Federal Rules of Civil Procedure, the impulse is toward a trial court entertaining the broadest possible scope of action consistent with fairness to the parties. Thus, joinder of claims, parties and remedies is strongly encouraged. Accordingly, the Supreme Court held that a federal district court is empowered with pendent jurisdiction to hear claims founded upon state law so long as

there is a claim "arising under [the] Constitution, the Laws of the United States, and Treaties made, or which shall be made under their Authority...," U.S. Const., Art. III, § 2, and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional "case." The federal claim must have substance sufficient to confer subject matter jurisdiction on the court. (Citation omitted.) The state and federal claims must derive from a common nucleus of operative fact. But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is *power* in the federal courts to hear the whole. *Id.* at 724–725, 86 S.Ct. at 1138.

Pendent jurisdiction, the Supreme Court emphasized, is a power which need not be exercised in every case in which it is found to exist. It is a doctrine of discretion, and does not grant to a plaintiff the right to litigate claims before a federal forum. "Its justification lies in considerations of judicial economy, convenience and fairness to the litigants." *Id.* at 726, 86 S.Ct. at 1139.

In *Rosado v. Wyman,* 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970), the court emphasized that pendent jurisdiction is based on the "common sense policy" of "the conservation of judicial energy and the avoidance of multiplicity of litigation." *Id.,* at 405, 90 S.Ct. at 1214.

In the instant case, I have already ruled, on Eleventh Amendment grounds, that this Court is without jurisdiction to hear all of Plaintiff's pendent claims but the claim against Defendant Haire, individually, for assault and intentional infliction of emotional distress. Had I not made such a ruling, I may have been more inclined to exercise pendent jurisdiction. However, since Plaintiff will be required to pursue several claims, including her claim based upon the Elliott-Larsen Civil Rights Act, in state court, I believe there is no reason to exercise pendent jurisdiction over the sole remaining state claim. In fact, it seems to me that interests of judicial economy, convenience, and fairness to the litigants compel the conclusion that the state claim against Defendant Haire should be resolved with Plaintiff's other state claims in state tribunals. I, therefore, exercise my discretion and dismiss Plaintiff's Count VI claim for assault and intentional infliction of emotional distress. The aspect of Defendants' motion relative to this claim is GRANTED.

### *VI. Breach of Sault Settlement Agreement*

Defendants contend that, by virtue of the settlement agreement entered into between Plaintiff and the Department in resolution of the EEOC charge filed in 1979 subsequent to her termination from the Sault Post, they are entitled to summary judgment on all allegations pertaining to Plaintiff's employment at Sault. Plaintiff, on the other hand, contends that the Sault civil rights action is revived by Defendants' failure to perform the settlement agreement; specifically, Defendants' failure to remove certain documents from her file.

As a rule, settlements reached in pursuance of EEOC practice are entitled to the treatment accorded voluntary settlements of litigation generally. *Spiridigliozzi v. Bethlehem Mines Corporation Cambria Division,* 558 F.Supp. 734 (W.D.Penn. 1980). Thus, what would amount to "waiver, release or covenant not to sue in any civil litigation is sufficient to produce the same consequences with respect to matters covered" by an EEOC settlement agreement. *Id* at 736.

Defendants cite a footnote in *Spiridigliozzi, supra* at 736 fn. 1, in support of their argument. The footnote states:

> The release is "subject to the performance by the Respondent of the promises and representations contained herein." But plaintiff makes no specific allegations of non-compliance except as to expungement of material from her employment file.... Such charges of non-compliance must be made to the EEOC. The settlement agreement specifies that EEOC "shall determine whether the Respondent has complied with the terms of this Agreement." At the present stage of proceedings no non-compliance can be assumed. The issue is prematurely presented to this Court which therefore now lacks jurisdiction. In any event the alleged non-compliance does not appear to relate to a matter sufficiently substantial to justify the invalidation of the settlement agreement after receipt of the $5,692.00 by plaintiff.

Since there is no clause in the settlement agreement involved herein which states that compliance will be determined by the EEOC, this footnote is not particularly helpful on that point. Nevertheless, involved herein is the analogous situation wherein Plaintiff was paid over $4,000 and was reinstated at the post of her choice. The reasoning of the last sentence of the cited footnote is equally applicable herein. In reaching this conclusion, however, I express no opinion as to the use of evidence of the breach in support of Plaintiff's claims for retaliation; or her June 1981 MDCR and EEOC charge, in which she specifically refers to the breach as part of the continuing practice of discrimination practiced by Defendants. The only claims affected by my ruling are the ones which attempt to revive the underlying Title VII action against the personnel at Sault.

Moreover, even if the alleged breach were more substantial, Plaintiff would be

precluded from reviving the underlying Title VII Sault claim.

In *Henderson v. McRae,* 148 Mich. 324, 327–328, 111 N.W. 1057 (1907), the Michigan Supreme Court stated:

> In matters of accord and satisfaction, there is a well defined and easily recognized distinction between two classes of agreements:
>
> 1. Where the agreement of the creditor is to accept the performance of the debtor's new promise or agreement in satisfaction of the demand.
>
> 2. Where such promise or agreement itself, based upon sufficient consideration, is accepted in satisfaction of the demand....
>
> And in this class of cases it must clearly appear that the intention of the party was to accept such promise, and not the performance, in satisfaction of the original demand. In the first class of cases, the accord must be fully executed to bar an action on the original demand... In the second class the original demand is extinguished, and cannot be the foundation of an action. (Citations omitted.)

This rule has been cited with approval many times. *See Fricke v. Forbes,* 294 Mich. 375, 293 N.W. 686 (1940); *Belrose v. Kanitz,* 284 Mich. 497, 280 N.W. 33 (1938); *Hoffman v. Burkhammer,* 373 Mich. 187, 128 N.W.2d 503 (1964); *Williams v. Slazinski,* 55 Mich.App. 221, 222 N.W.2d 189 (1974). In *Belrose, supra* 284 Mich. at 502, 280 N.W. 33, the court stated:

> The distinction between an agreement which is, *per se,* to satisfy and extinguish an existing debt, and an agreement, the performance of which is to have that effect, must not be overlooked. The former operates as an immediate satisfaction of the debt; the latter, only when performed.

The settlement agreement involved herein provides that "in exchange for the promises made by" the Department, Plaintiff will not institute a Title VII action based upon the Sault events. Comparing this language with the principles and cases cited above, I am of the opinion that this agreement was intended, *per se,* to satisfy the "debt" owed by the Department to Plaintiff; and was thus, in itself, sufficient to extinguish Plaintiff's Sault Title VII claim. Plaintiff's remedy for the alleged subsequent breach is in an action for breach of contract, not under Title VII for the underlying claim.

This aspect of Defendants' Motion for Summary Judgment is GRANTED.

### *VII. Performance Evaluations*

Defendants argue, in two separate issues, that Plaintiff was properly evaluated utilizing the same criteria used for every trooper, and therefore her allegations concerning the use of different criteria are without merit. Having considered this argument, and the material cited in support thereof, I am in agreement with Plaintiff that genuine issues of material fact exist as to the objective and unbiased nature of the performance evaluations in question. Defendants' Motion for Summary Judgment on these issues is DENIED.

### *VIII. Immediate Corrective Action*

Defendants argue that they are entitled to summary judgment on Plaintiff's sexual harassment claims on the ground that immediate and appropriate corrective action was taken upon Plaintiff's complaint. I am again in agreement with Plaintiff that genuine issues of material fact exist as to this issue. This portion of Defendants' Motion for Summary Judgment is DENIED.

### *IX. Parroting of EEOC Guidelines*

Defendants contend that the allegations in Plaintiff's Complaint parroting the EEOC guidelines found in 29 CFR 1604.11 *et seq* fail to state a claim, because the EEOC guidelines do not impose affirmative duties upon Defendants. They contend that three paragraphs of Plaintiff's Complaint should, therefore, be dismissed.

The EEOC guidelines constitute administrative interpretation of Title VII by the enforcing agency, and are thus "entitled to great deference." *Albermarle Paper Company v. Moody,* 422 U.S. 405, 431, 95 S.Ct. 2362, 2378, 45 L.Ed.2d 280

(1975). An examination of the paragraphs in question reveals that a few of the numerous allegations found therein contain language like that found in the EEOC guidelines. However, I find no basis, and Defendants have provided me with none, upon which to conclude that this somehow renders these paragraphs subject to dismissal. Plaintiff will be required to satisfy her burden of proof at trial as to her various allegations, based upon the appropriate legal principles. Defendants' Motion to Dismiss on this ground is DENIED.

### X. *Conclusion*

In accordance with the above, Defendants' Motion to Dismiss Complaint or for Summary Judgment is GRANTED in part; DENIED in part.

Because of my conclusions herein, I find it unnecessary to address Defendants' remaining arguments. However, the issues raised by Defendants were somewhat complex, and often confusingly interrelated. Should it appear that an issue not addressed by this Court pertains to the remaining counts in Plaintiff's Complaint, Defendants may re-submit pleadings on that issue within ten (10) days from the date of this Opinion. Plaintiff shall have ten (10) days thereafter in which to respond.