**Jeanne BARANEK, et al., Plaintiffs,**

**v.**

**Kathleen KELLY, et al., Defendants.**

**Civ. A. No. 85–0376–C.**

United States District Court,
D. Massachusetts.

March 20, 1986.

Carol R. Wasserman and Brian Michael Olmstead, Olmstead, Wasserman & Greenwood, Salem, Mass., for plaintiffs.

Walter H. Mayo and Robert Cowden, III, Casner, Edwards & Roseman, Boston, Mass., for defendants.

Despena F. Billings, Asst. Atty. Gen., Boston, Mass., for State defendants Mass. Dept. of Elder Affairs.

## MEMORANDUM

CAFFREY, Chief Judge.

This is a civil action in which the plaintiffs allege discriminatory employment practices in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* The plaintiffs are Jeanne M. Baranek and the Minority Group of Area II Home Care for Senior Citizens, Inc. ("Minority Group"), which is an association of black female employees. The defendants are the employing unit, Area II Home Care for Senior Citizens, Inc. a/k/a Central Boston Elder Services, Inc. ("Area II"); Area II's executive director at the relevant time, Kathleen Kelly; Area II's board of directors and its president, Marion Fowler; and the Massachusetts Department of Elder Affairs ("the MDEA"). The matter is now before this Court on the defendant MDEA's motion to dismiss, the non-state defendants' motion for summary judgment, the plaintiffs' motion to amend their complaint, and the plaintiffs' motion to compel discovery.

### Statement of Facts

Plaintiff Baranek is a caucasian female who was employed by Area II until September 20, 1982. Area II is a non-profit, private corporation which provides home care and other services to the elderly poor. It receives funding from the Commonwealth of Massachusetts through the MDEA and from the United States government. As Area II's assistant director, Baranek was the affirmative action officer ("AAO") and was responsible for preparation of Area II's revised affirmative action

plan ("AAP") which was approved by the board of directors of Area II in June of 1982.

The AAP provides that the executive director is responsible for planning, developing, monitoring, evaluating and implementing the AAP and for appointing an AAO, who has the operational responsibility for implementing the AAP under the executive director's direction. Area II's AAP also includes an affirmative action grievance procedure. Under this procedure, a complainant files a complaint with the AAO, who then meets with the complainant to develop, if possible, an informal resolution of the problem and to inform the complainant of his or her legal options. If the complainant wishes to pursue the matter, the AAO then investigates and makes a report to the complainant, again in an attempt to resolve the dispute. If the matter is still not resolved, the complainant may present the grievance to the executive director, and then to the board of directors, for review.

On August 9, 1982, Baranek, as the AAO, received a complaint from the Minority Group alleging racial and employment discrimination within Area II and requesting a meeting. Defendant Kelly also received a copy of the complaint, and informed Baranek that she, Kelly, would handle the matter herself. The Minority Group thereafter again contacted Baranek, requesting a meeting and stating that they did not want to meet with Kelly because she was not the AAO and was part of the group allegedly practicing discrimination. Baranek again spoke to Kelly, and insisted on meeting with the Minority Group as the AAO. After meeting with five members of the Minority Group, Baranek reported to Kelly that an informal grievance mechanism had been selected. Baranek then left on her scheduled vacation.

When Baranek returned from her vacation, Kelly presented her with a letter demanding Baranek's resignation and stating that Baranek would be fired if she did not resign. According to the letter, the grounds for the request were Baranek's insubordination and failure to complete assigned tasks in a timely fashion. Baranek did not resign. She was fired by Kelly, and her termination was later sustained by a personnel grievance committee composed of members of Area II's board of directors. Prior to being fired, Baranek allegedly informed the MDEA of Area II's actions, which, she asserted, were in contradiction to the AAP plan required by the MDEA.

Shortly after her termination, Baranek filed charges with the Equal Employment Opportunity Commission ("EEOC") against all named defendants except the MDEA, claiming that Area II discharged her in retaliation for her having protested discriminatory practices while fulfilling her responsibilities as an AAO. The EEOC found reasonable cause to believe Baranek's charge was true. The Minority Group also filed charges with the EEOC against Area II, alleging discrimination based on Area II's failure or refusal to promote minority employees to supervisory or middle management positions. The EEOC again found reasonable cause to believe the charge was true. Following unsuccessful efforts at conciliation, the EEOC issued right-to-sue letters to the plaintiffs against the Area II defendants.

The plaintiffs commenced suit against the AREA II defendants in January of 1985. Several months later, this Court allowed the plaintiffs to amend the complaint to include the MDEA as a defendant pursuant to Fed.R.Civ.P. 19.

*Defendant MDEA's Motion to Dismiss*

Defendant MDEA has moved to dismiss the complaint against it, claiming lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted under Title VII. Fed.R.Civ.P. 12(b)(1) and 12(b)(6). Addressing first the issue of subject matter jurisdiction, the MDEA argues that the plaintiffs have failed to exhaust their administrative remedies before the Massachusetts Commission Against Discrimination ("MCAD") and the EEOC concerning claims against the MDEA. In support of this contention, the MDEA points out that the plaintiffs did not

file charges against it with the MCAD or EEOC, nor did the EEOC issue a right-to-sue letter naming the MDEA as a respondent. According to the MDEA, because the plaintiffs did not file administrative charges against the MDEA within the 300 day time period permitted under 42 U.S.C. § 2000e–5(e), any charges against it are now time barred. Furthermore, the MDEA asserts, plaintiffs may not bring Title VII actions against defendants not named in the charge to the EEOC.

The plaintiffs, in opposition, argue that they could not charge the MDEA before the MCAD or the EEOC because the MDEA was not directly involved with the alleged discriminatory practices. Moreover, the plaintiffs state, the MDEA has been joined to the action so that the plaintiffs may be afforded complete relief, which, they contend, is not possible without the MDEA's exercise of its regulatory power over Area II. By joining the MDEA, plaintiffs claim, unnecessary further litigation is avoided.

■ The general rule is that before a complainant can sue a defendant under Title VII, he must first file a charge against that party with the EEOC. *E.g., Sedlacek v. Hach,* 752 F.2d 333, 336 (8th Cir.1985). The purpose of this requirement is twofold: to provide notice to the charged party and to bring the relevant parties before the EEOC in an effort to secure voluntary compliance with the statute. *E.g., Glus v. G.C. Murphy Co.,* 562 F.2d 880, 888 (3d Cir. 1977). There are, however, judicially created exceptions to the strict application of this general rule. *Brewster v. Shockley,* 554 F.Supp. 365, 368 (W.D.Va.1983). One exception is where the named defendant and unnamed defendant are substantially identical or are in an agency relationship. *Id.* Another exception is where the named and unnamed defendants are engaged in a common discriminatory scheme. *Id.*

■ Looking at the first exception, based on the record before the Court, I rule that the MDEA and Area II are not substantially identical parties. The MDEA and Area II do not have a statutory relationship which provides the MDEA with direct or indirect control over Area II's employment decisions. *Compare Brewster,* 554 F.Supp. at 368–69 (defendants in statutory relationship deemed collectively to be employer). Area II is a private corporation, not a division of a governmental entity with some type of vertical responsibility to the MDEA. Moreover, plaintiffs do not allege that an agency relationship exists between the two parties. In fact, from the record it appears that the MDEA's sole method of control over Area II is to withdraw its approval of state funding for the corporation.

■ Turning to the second exception, although the plaintiffs contend that the MDEA was aware of the substance of the dispute between Baranek and Area II, the plaintiffs do not allege that the MDEA actually participated in the alleged discriminatory actions of Area II. At most, plaintiffs contend that the MDEA failed to act when faced with reports of such illegal activity. The plaintiffs state that they joined the MDEA to this action for the sole purpose of attaining relief in the form of court-ordered regulatory action by the MDEA. Therefore, I rule that the second exception to the general rule also does not apply in this case.

■ The inquiry into this Court's subject matter jurisdiction over the MDEA does not end there, however. Rule 19(a) of the Federal Rules of Civil Procedure permits joinder of a party whose presence is necessary to afford complete relief to a plaintiff. The use of Rule 19(a) is consistent with Title VII's grant of broad equitable powers to the courts to eradicate the effects of discrimination. *Equal Employment Opportunity Comm'n v. MacMillan Bloedel Containers, Inc.,* 503 F.2d 1086, 1095–96 (6th Cir.1974). Nothing in the Civil Rights Act indicates that Congress anticipated that Rule 19 would not apply in employment discrimination cases. *Id.* at 1096. In fact, to deny the use of Rule 19(a) in a Title VII case might actually frustrate the intent of Congress by caus-

ing the dismissal of an action due to the failure to name an obscure but indispensable party at the administrative stage—a point where complainants are often unaided by counsel and are unable to foresee procedural problems. *Evans v. Sheraton Park Hotel,* 503 F.2d 177, 183 (D.C.Cir.1974). Joinder of a defendant not named at the administrative stage but who is an indispensable party is therefore permissible and advisable, especially when the unnamed party is not being charged with a Title VII violation in the court action and the injunctive relief requested is necessary to prevent future discrimination. *See Evans,* 503 F.2d at 181; *Bloedel,* 503 F.2d at 1095.

■ The plaintiffs in this case allege that complete relief is not possible absent the presence of the MDEA. According to the plaintiffs, the MDEA is a major funding and contract source for Area II, and the AAP which is the focus in this case was required by, and approved by, the MDEA. Taking as true statements in the complaint and in the plaintiffs' motion to join the MDEA as the Court must when considering a motion to dismiss, I rule that the MDEA is an indispensable party to this case. The MDEA's motion to dismiss for lack of subject matter jurisdiction should therefore be denied.

■ In addition to its argument based on Fed.R.Civ.P. 12(b)(1), the MDEA also contends that the plaintiffs have failed to state a claim against the MDEA under Title VII and that therefore the complaint should be dismissed as to the MDEA. *See* Fed.R. Civ.P. 12(b)(6). When considering a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), the question for the Court is whether, taking as true the allegations in the plaintiffs' complaint and resolving every doubt in their behalf, the complaint states a valid claim for relief. *E.g., Vermett v. Hough,* 606 F.Supp. 732, 736 (W.D. Mich.1984). A motion to dismiss brought under the civil rights acts must be scrutinized with special care. *Id.*

■ In support of its 12(b)(6) motion, the MDEA argues that because it is not the employer which engaged in the alleged unlawful employment practice, the complaint, based on Title VII claims, fails as a matter of law. It is clear that the MDEA was not the plaintiffs' employer in the conventional sense of the word. In order to effectuate the policies of Title VII, however, liberal construction may be given to the term "employer." *Owens v. Rush,* 636 F.2d 283, 287 (10th Cir.1980). Consequently, entities which exercise significant control over an employment situation may be proper defendants in a Title VII action even though they are not the immediate employer. *See Sibley Memorial Hospital v. Wilson,* 488 F.2d 1338, 1340–41 (D.C.Cir. 1973) (hospital referral system is "employer" of listed private duty nurses for purposes of Title VII). Justification for this position lies in the congressional objective which pervades Title VII: to afford equality of employment opportunity. *Shehadeh v. Chesapeake and Potomac Tel. Co. of Maryland,* 595 F.2d 711, 721 (D.C.Cir. 1978).

■ The issue for this Court, therefore, is whether the complaint alleges sufficient facts to find that the MDEA exercises the requisite control over Area II's employment practices to warrant inclusion in the term "employer." Examining the complaint in the light most favorable to the plaintiffs, I rule that the MDEA is an employer of Area II's employees for the purposes of this Title VII action. According to the plaintiffs, the MDEA has "the means and authority" to control discriminatory employment practices on the part of Area II due to the contractual arrangement between the MDEA and Area II. Plaintiffs also allege that the AAP exists because of a contractual provision in the agreement between the MDEA and Area II. Based on these representations by the plaintiffs and on the plaintiffs' asserted need to have affirmative relief ordered against the MDEA, I rule that the motion to dismiss for failure to state a claim should be denied.

### Non-State Defendants' Motion for Summary

### Judgment

The non-state defendants, who are all defendants except the MDEA, have moved for summary judgment on both counts of the complaint in this case. Summary judgment may be granted only when there is no genuine issue as to any material fact. Fed. R.Civ.P. 56(c).

In Count I, Baranek claims that Area II fired her in reprisal for her participation in protected activities, in violation of 42 U.S.C. § 2000e–3(a). The defendants assert that Baranek's actions were not protected activities and that she was fired for insubordination. In Count II, the Minority Group alleges that the defendants have engaged in unlawful acts of racial and employment discrimination. The EEOC found reasonable cause to believe that both Baranek's and the Minority Group's charges are true. Summary judgment is generally an inappropriate vehicle for resolution of a dispute when the underlying issue, as it is here, is one of motive or intent. *E.g., Craft v. Economy Fire & Casualty Co.,* 572 F.2d 565, 573 (7th Cir.1978). I therefore rule that the motion for summary judgment should be denied.

### Plaintiffs' Motion to Amend Complaint

Plaintiffs have requested leave to amend their complaint to add two more counts: count three, alleging the bad faith termination of Sandra Jordan by Area II, and count four, alleging that Area II terminated Jordan in retaliation for her participation as a member of the Minority Group in the instant court action, in violation of 42 U.S.C. § 2000e–3(a). The nonstate defendants oppose the motion, arguing that because the issues relating to Jordan's termination have never been presented to the EEOC, Jordan has failed to exhaust her administrative remedies as required by Title VII. Jordan was fired on June 12, 1985. Judicial proceedings commenced in this action in January of 1985.

Although a Title VII plaintiff must usually exhaust her administrative remedies before seeking judicial relief for an alleged discriminatory act, a plaintiff may be excused from this requirement when she has previously filed an EEOC charge alleging a pattern of continuing discrimination and the new act of discrimination alleged in the judicial complaint is reasonably related to the original charge. *Ramirez v. Nat'l Distillers and Chem. Corp.,* 586 F.2d 1315, 1320 (9th Cir.1978). In such a situation, the primary purposes of requiring exhaustion of EEOC procedures, which are to give notice to the employer of the alleged discriminatory actions and to encourage voluntary compliance, will not be frustrated. *See Garcia v. Gardner's Nurseries, Inc.,* 585 F.Supp. 369, 373 (D.Conn.1984). This approach avoids the danger of emphasizing procedure or form over substance, and furthers the purpose behind Title VII without prejudicing the defendants. *Id.* at 373–74.

Jordan was a member of the Minority Group which filed a charge with the EEOC against Area II alleging discrimination against blacks and hispanics in employment practices and discriminatory harassment of Minority Group members. She was therefore, in essence, a plaintiff in the original charge to the EEOC. Consequently, the issue is whether Jordan's allegedly retaliatory termination is reasonably related to the Minority Group's original charge. I rule that it is. Although the record does not include a copy of the Minority Group's original filing with the EEOC, the charge of harassment of minorities would include the act of terminating an employee for participation in a lawsuit concerning allegations of discrimination in employment. To require Jordan to first file her charge with the EEOC would not further the purposes of the administrative requirement of Title VII. *See Ramirez,* 586 F.2d at 1320. I note that in Title VII cases, the procedural framework and pleadings must be liberally construed in favor of the alleged victim of discrimination. *Id.* at 1321. The motion to amend should be allowed as to count four, which alleges a violation of Title VII. I decline to exercise

jurisdiction over count three, however, which apparently is based on state law, and I rule that the amendment adding count three should not be allowed.

*Plaintiffs' Motion to Compel Discovery*

On September 16, 1985, the non-state defendants filed a motion for a protective order, claiming that the plaintiffs have harassed them by noticing 55 depositions, and filing twelve sets of interrogatories and five requests for production of documents within the month prior to the date set for completion of discovery. Plaintiffs in turn filed a motion to compel responses to interrogatories from various of the non-state defendants on October 4, 1985. It is the plaintiffs' motion which is now before this Court. According to the record, defendants were willing to file answers to interrogatories if the case were to proceed on the merits. In light of the rulings in this opinion, the answers should be filed forthwith.

Order accordingly.