**Pamela Jo SHERMAN, Plaintiff,**

v.

**STANDARD RATE DATA SERVICE, INC., Defendant.**

No. 88 C 3140.

United States District Court, N.D. Illinois, E.D.

Feb. 27, 1989.

Joan Ellen Smuda, Chicago, Ill., for plaintiff.

Michael A. Stiegel, Arnstein, Gluck, Lehr & Milligan, Adele Rapport, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ROVNER, District Judge.

### I. INTRODUCTION

Plaintiff Pamela Jo Sherman ("Sherman") filed a three-count amended complaint in this action against her former employer, defendant Standard Rate Data Services, Inc. ("Standard Rate") under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e–5 ("Title VII"), seeking permanent injunctive relief, an order of reinstatement, and monetary damages against defendant for the sexual harassment of plaintiff by her supervisor (Count I); for the breach of a settlement agreement between the parties and the Equal Employment Opportunity Commission ("EEOC") (Count II); and for the retaliatory discharge of plaintiff for having filed her charge of sexual discrimination with the EEOC (Count III). Standard Rate has moved for dismissal of plaintiff's amended complaint pursuant to Fed-

eral Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons set forth below, defendant's motion is granted as to Counts I and III of plaintiff's amended complaint and denied as to Count II.

## II. FACTUAL BACKGROUND [1]

Plaintiff Sherman was an employee of defendant Standard Rate from on or about August 6, 1981 until December 1, 1984. Hired as an administrative assistant, Sherman's duties in this position were to provide technical support to programmers and analysts while she received the technical training necessary to become a programmer or analyst. Sherman served as an administrative assistant until November 22, 1982 when she was demoted to a secretarial position. Richard Caldwell ("Caldwell") served as Sherman's supervisor during her tenure with Standard Rate.

Shortly after her demotion, on December 6, 1982, Sherman filed a written charge with the EEOC alleging that Standard Rate, through its employee Caldwell, discriminated against her on the basis of her sex. Specifically, Sherman charged that Caldwell sexually harassed her by touching her without her consent, using lewd and suggestive language with her, and threatening and intimidating her in an attempt to force her to submit to his sexual overtures.

Sherman's charge with the EEOC was resolved on March 3, 1983 when the parties and the EEOC entered into a Settlement Agreement ("Settlement") and a Settlement Agreement and Release ("Release"). Pursuant to the Settlement, Standard Rate agreed to initiate technical training for Sherman, to compensate Sherman with back pay, if any, for the difference between her being paid on a salary basis instead of an hourly basis, to expunge Sherman's record of any negative memoranda, disciplinary writeups, and reports referring to her demotion, to allow Sherman the right to review her personnel file and object to any documents contained therein, and not to retaliate against Sherman for filing her sexual discrimination charge with the EEOC. In exchange for these promises made by Standard Rate, both the EEOC and Sherman agreed not to institute a lawsuit against Standard Rate under Title VII based on the EEOC charges.[2]

According to Sherman, Standard Rate never complied with any of the terms of the Settlement and Release. With respect to the specific promise of training, Sherman alleges that she was told by Standard Rate that she would not receive the promised training because her position was being phased out and she would not be employed with Standard Rate much longer. Sherman was terminated as an employee on December 1, 1984. She alleges that her termination was in retaliation for her earlier filing of sexual discrimination charges with the EEOC.

On April 2, 1987, Sherman filed a complaint against Standard Rate in the United States District Court for the Northern District of Illinois. Judge Leighton dismissed the complaint without prejudice on November 16, 1987. The instant three count amended complaint was filed with this

1. In ruling upon a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the court must accept as true all of the allegations in Sherman's complaint. *Jenkins v. McKeithen,* 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969); *Greene v. Finley,* 749 F.2d 467, 468 (7th Cir.1984). All of the facts in this section are taken from allegations in plaintiff's amended complaint and the exhibits attached to her amended complaint.

2. Sherman made the same promise not to use the EEOC charge as the basis for a Title VII lawsuit pursuant to the terms of the Release. The Release provided in part:
   Sherman will and does hereby release [Standard Rate] and any past, present or future officer, agent, employer or attorney of [Stan-

dard Rate] from any and all liability under any presently existing action and causes of action or any action which may arise under any express or implied contract, federal state or local fair employment practice or other employee relations statute, executive order, law or ordinance, tort or other public policy obligation arising out of Sherman's employment to date with [Standard Rate], including but not limited to, relief in any administrative proceedings or plenary actions brought pursuant to Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. § 2000e *et seq.*) specifically including but not limited to, EEOC Charge Number 051830911.
(Release, at 1–2).

Court on December 17, 1987. Presently pending before the Court is Standard Rate's motion to dismiss all three counts of Sherman's amended complaint.

## III. DISCUSSION

### A. *Count I*

In Count I, Sherman asserts a Title VII claim against Standard Rate based on the same discriminatory acts which served as the basis for the sexual discrimination charge she filed with the EEOC on December 6, 1982 while she was still an employee at Standard Rate. Standard Rate moves to dismiss Count I pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction or, in the alternative, pursuant to Fed. R.Civ.P. 12(b)(6) for failure to state a cause of action upon which relief may be granted.

The threshold issue is whether this Court has subject matter jurisdiction over Sherman's claim in Count I. Standard Rate argues that Count I suffers from two jurisdictional defects: 1) Sherman's failure to file a subsequent charge with the EEOC or to reinstate her original charge after her charge was dropped as part of the Settlement and Release,[3] and 2) Sherman's failure to receive a "right to sue" letter[4] from the EEOC prior to filing suit in federal court. Sherman argues that the charge filing and right to sue letter requirements are not jurisdictional prerequisites, but are statutory requirements which are subject to equitable modification by the district court. Sherman admits both that she failed to reinstate her original EEOC charge and that she failed to obtain a right to sue letter, but suggests that the facts of this case entitle her to equitable modifica-

tion of these Title VII statutory requirements.

In *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982), the United States Supreme Court held that:

filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel and equitable tolling.

Based on its review of the structure of Title VII, the congressional policy underlying it, and its own precedent, the Supreme Court held that "the provision for filing charges with the EEOC should not be construed to erect a jurisdictional barrier to suit in district court." *Id.* at 397, 102 S.Ct. at 1132. After *Zipes*, Sherman's failure to reinstate her charges with the EEOC does not deprive this court of subject matter jurisdiction over Count I of her amended complaint.

Following *Zipes*, decisions from several other circuits have extended the reasoning of *Zipes* to hold that the procedural requirement of obtaining a right to sue letter, like the charge filing requirement at issue in *Zipes*, is no longer considered a jurisdictional prerequisite to suit but is, instead, a statutory prerequisite analogous to a statute of limitations and is subject to equitable modification by a district court when appropriate. *See, e.g., Bintz v. NSU Bd.*, 811 F.2d 1504 (Table) (text in WESTLAW) No. 86–110, slip op. at 4 (4th Cir. Feb. 2, 1987) (WESTLAW CTA Database); *Gooding v. Warner–Lambert Co.*, 744 F.2d

---

**3.** In a Title VII action, an aggrieved person must file a complaint with the EEOC "within one hundred eighty days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e–5(e). Because Illinois law has an applicable state law to which Ms. Sherman had recourse, the filing period is extended to three hundred days. *Id.; Gilardi v. Schroeder*, 833 F.2d 1226, 1230 (7th Cir.1987).

**4.** 42 U.S.C. § 2000e–5(f)(1) (1982) provides in relevant part:

If a charge filed with the Commission ... is dismissed by the Commission, or if within one hundred and eighty days from the filing

of such charge ..., the Commission has not filed a civil action under this section ..., or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission ... *shall so notify the person aggrieved* and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge ... by the person claiming to be aggrieved....

(emphasis added). This statutorily required notification by the EEOC is known as a "right to sue" letter.

354 (3d Cir.1984); *Fouche v. Jekyll Island–State Park Authority*, 713 F.2d 1518 (11th Cir.1983); *Pinkard v. Pullman–Standard*, 678 F.2d 1211 (5th Cir. Unit B 1982), *cert. denied*, 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 954 (1983); *Hladki v. Jeffrey's Consolidated, Ltd.*, 652 F.Supp. 388, 392 (E.D.N.Y.1987). The Court finds the reasoning of these cases persuasive, and in the absence of any compelling contrary authority from courts within the Seventh Circuit,[5] holds that a right to sue letter is not a jurisdictional prerequisite to the filing of a Title VII action. Accordingly, Count I cannot be dismissed for lack of subject matter jurisdiction on this basis.

■ Although the charge filing requirement and right to sue letter requirements are not jurisdictional prerequisites, they are statutory prerequisites and Sherman's failure to comply with them, absent special circumstances justifying equitable modification, subject Count I of her amended complaint to dismissal on Fed.R.Civ.P. 12(b)(6) grounds. Plaintiff has not set forth any reasons that would justify an equitable modification of these statutory requirements. In *Hladki*, the court examined relevant case-law and compiled a list of situations that have led courts to invoke equitable principles to modify Title VII's statutory requirements:

1) when a claimant has received inadequate notice; (2) when a motion for appointment of counsel is pending; (3) when a court has led a plaintiff to believe that he or she has done everything required; (4) when affirmative misconduct has lulled a plaintiff into inaction; (5) when a "plaintiff has in some extraordinary way been prevented from asserting his rights"; (6) when a plaintiff "has raised the precise statutory claim in issue

but has mistakenly done so in the wrong forum;" (7) when a right to sue letter has been received subsequent to commencement of a Title VII action and while the action is still pending; or 8) when the EEOC or Attorney General has incorrectly refused to issue a right to sue letter.

652 F.Supp. at 393 (citations omitted).

Sherman has not alleged that she is entitled to equitable modification for any of the aforementioned reasons. Instead, Sherman asserts that Standard Rate's actions in knowingly and deliberately entering into the Settlement and Release with no intention of complying with its terms were "wrongful and dilatory toward plaintiff." Even if this unsupported allegation were true, it does not explain Sherman's failure to reinstate her charges after Standard Rate's alleged breach of the settlement agreement or seek a right to sue letter from the EEOC prior to filing the instant amended complaint. The Court agrees with the defendant that Sherman's own lack of diligence precludes the application of principles of equitable modification. Accordingly, Count I of Sherman's amended complaint is dismissed for failure to state a claim upon which relief can be granted under Fed.R.Civ.P. 12(b)(6).

■ In addition to Sherman's failure to meet the statutory requirements or conditions precedent of a Title VII claim, two other reasons compel the Court to dismiss Count I of Sherman's amended complaint. The Court must dismiss Count I because a party who agrees to settle a discrimination claim cannot seek both the benefit of the settlement and "the opportunity to continue to press the claim [s]he agreed to settle." *Wilmes v. U.S. Postal Service*, 810 F.2d 130, 132 (7th Cir.1987) quoting *Kirby*

---

**5.** The Seventh Circuit has not addressed the question of whether a right to sue letter is a jurisdictional prerequisite since the Supreme Court's opinion in *Zipes*. The sole case cited by Standard Rate for this proposition, *Collins v. Dept. of Public Aid*, No. 87 C 499, slip op., 1987 WL 17830 (N.D.Ill. Sept. 25, 1987) (LEXIS, Genfed, Courts file) contains no discussion of *Zipes*. As a practical matter, whether the "right to sue letter" is a condition precedent or jurisdictional prerequisite makes little difference.

Dismissals for failure to obtain a "right to sue letter" are typically "without prejudice," affording plaintiff the opportunity to obtain the necessary "right to sue letter." *See Collins*, slip op. at 2; *Hladki*, 652 F.Supp. at 394. Dismissal of Count I in this case is with prejudice because principles of equitable modification do not apply to allow plaintiff to circumvent the charge filing requirement and because of the other two grounds for dismissal discussed later in this opinion.

*v. Dole*, 736 F.2d 661, 664 (11th Cir.1984). *See also Strozier v. General Motors Corp.*, 635 F.2d 424 (5th Cir.1981); *Grayer v. Copperweld Steel Co.*, 687 F.Supp. 1157 (N.D. Ohio 1988).

Count II of Sherman's amended complaint seeks relief from Standard Rate for its alleged breach of the Settlement it entered into with Sherman and the EEOC. In asserting both the sexual discrimination claim in Count I which she previously settled and the breach of the Settlement claim in Count II, Sherman essentially wants to both "have her cake and eat it too." The Court will not allow Sherman this luxury. In voluntarily entering into the Settlement with Standard Rate and the EEOC, Sherman waived her right to bring a subsequent action in this Court based upon the same fact situation as the claim she settled. *Garvin v. Postmaster, U.S. Postal Service*, 553 F.Supp. 684 (E.D.Mo.1982) *aff'd*, 718 F.2d 1108 (8th Cir.1983). Sherman argues that because Standard Rate breached the Settlement, the Court should allow her to pursue the underlying discrimination claim. Even when a party alleges a breach of a voluntary settlement agreement, she is precluded from reviving the underlying Title VII claim in federal court. *Vermett v. Hough*, 606 F.Supp. 732, 745–46 (W.D.Mich. 1984). Sherman's remedy for the alleged subsequent breach is confined to her cause of action for breach of the Settlement. *Id.* at 746.

██ In a similar vein, the Court finds that Count I must be dismissed because the Release precludes plaintiff from litigating the underlying sexual discrimination claim. When a potential Title VII plaintiff executes a general release in clear and unambiguous language in favor of a given party, the release serves as a bar to a subsequent Title VII claim brought in federal court against that party. *Pilon v. Univ. of Minnesota*, 710 F.2d 466 (8th Cir.1983). In *Pilon*, the plaintiff sued the university in a state court proceeding in 1977 alleging discrimination on the basis of her sex when the university denied her a Ph.D. in Educational Administration. *Id.* at 467. The

parties settled that lawsuit in 1980. On March 17, 1981, the plaintiff signed a general release which provided in part:

> [The plaintiff] ... does hereby release acquit and forever discharge [the university] ... from any and all manner of action or actions, suits, claims, damages, judgments, levies, and executions, whether known or unknown, liquidated or unliquidated, fixed or contingent, direct or indirect, which [the plaintiff] ever had, has or ever can, shall or may have or claim to have against [the university] from any act or thing occurring prior to the date of the execution of this document and without limiting the generality of the foregoing: to any and all claims which may have been asserted in ... [the 1977 lawsuit].

*Id.* at 467.

Two months after signing the release, the plaintiff filed a claim alleging that from 1975 to 1980 the same university discriminated against her on the basis of her sex when it denied her a position as a member of the faculty. The Eighth Circuit affirmed the order of the district court which granted summary judgment in favor of the university. The court held that absent a claim of fraud or duress by the plaintiff in executing the release, the clear and unambiguous language of the release barred the plaintiff from bringing a later Title VII claim based upon pre-release events. *Id.* at 467–68.

Similarly, in the instant case, Sherman executed a release which contained clear and unambiguous language specifically waiving any Title VII claims which arose prior to the date of the release.[6] Sherman offers no response to Standard Rate's argument that the release precludes Sherman's claim in Count I and she fails to allege that she signed the release as a result of fraud or duress.

For a release or waiver of a discrimination claim to be valid, courts require that the releasing party knowingly and voluntarily waive Title VII rights. *See Glass v. Rock Island Refining Corp.*, 788 F.2d 450

---

**6.** *See supra,* note 2.

(7th Cir.1986); *Garvin*, 553 F.Supp. at 687 (citing *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974)). If the plaintiff fails to allege that the defendant misrepresented the terms of the release or that she was unaware of the terms of the same, then the Court must conclude that the plaintiff's assent to the release was voluntary and knowing. *Garvin*, 553 F.Supp. at 687. Sherman makes no allegation concerning the integrity of the release or her lack of knowledge as to its terms. Thus, the Court must conclude that she voluntarily and knowingly waived her right to assert a Title VII claim based upon acts allegedly committed by Standard Rate prior to the date of the Release.

For these accumulated and alternative reasons, Standard Rate's motion to dismiss Count I of Sherman's amended complaint for failure to state a claim upon which relief can be granted pursuant to Fed.R. Civ.Pro. 12(b)(6) is granted.

### B. *Count II*

▮ In Count II of her amended complaint, Sherman seeks redress for Standard Rate's alleged breach of the Settlement. The settlement agreement between Sherman, Standard Rate and the EEOC, entered into by the parties on December 6, 1982, was reached shortly after Sherman filed her sexual discrimination charge with the EEOC. The Settlement was a "predetermination settlement agreement" which is "a contract between a complaining employee and the allegedly discriminatory employer that is reached with the aid of the EEOC prior to an EEOC determination of the merits of the complaining employee's charge of discrimination." *Brewer v. Muscle Shoals Bd. of Educ.*, 790 F.2d 1515, 1519 (11th Cir.1986). Predetermination agreements are creatures of the EEOC's regulations,[7] and differ from "conciliation agreements" which are statutory creatures and which follow an EEOC investigation and determination of reasonable cause.[8]

Standard Rate reiterates its argument that Sherman's failure to receive a right to sue letter and failure to file a charge with the EEOC concerning the alleged breach of the Settlement require dismissal of Count II. Stressing the differences between conciliation agreements and predetermination agreements, Standard Rate distinguishes the cases cited by Sherman and argues that Sherman may not sidestep the requirement that she exhaust administrative remedies before bringing her suit for breach of the Settlement directly in federal court. Alternatively, Standard Rate argues that Count II should be dismissed because Sherman waited over two years after the alleged breach to institute her suit in federal court.

The Seventh Circuit's decision in *E.E.O. C. v. Liberty Trucking Co.*, 695 F.2d 1038 (7th Cir.1982) is a good starting point for the discussion of the issues presented in this case. In *Liberty Trucking*, the Seventh Circuit addressed the question of whether a suit brought by the EEOC seek-

---

**7.** The predetermination settlement agreement at issue in this case apparently is the product of the Commission's "Rapid Charge Processing System," adopted in 1977 by the EEOC and designed as a "response to an increasing backlog of charges resulting from time-consuming investigations." *E.E.O.C. v. Henry Beck Co.*, 729 F.2d 301, 303 (4th Cir.1984). 29 C.F.R. 1601.-20(a) (1979), which provides for such negotiated setlements, states in pertinent part:

> Prior to the issuance of a determination as to reasonable cause, the Commission may encourage the parties to settle the charge on terms that are mutually agreeable ... The Commission shall limit its undertaking in such settlements to an agreement not to process that charge further. Such settlements shall note that the Commission has made no judgment on the merits of the charge....

**8.** The statutory scheme for processing unfair employment practice charges filed with the EEOC, set forth in § 706(b) of Title VII, 42 U.S.C. § 2000e-5(b), requires the EEOC to try to eliminate the alleged unlawful employment practice through informal methods of conciliation. 42 U.S.C. § 2000e-5(b) provides in relevant part:

> Whenever a charge is filed by ... a person claiming to be aggrieved .. alleging that an employer ... has engaged in an unlawful employment practice, the Commission shall ... make an investigation thereof ... If the Commission determines after such investigation that there is reasonable cause to believe that the charge is true, the Commission shall endeavor to eliminate any such unlawful practice by informal methods of conference, conciliation, and persuasion.

ing enforcement of a conciliation agreement is one brought directly under Title VII of the Civil Rights Act for purposes of federal jurisdiction. *Id.* at 1040. The district court, although finding that the defendant had deliberately breached the conciliation agreement, held that it lacked subject matter jurisdiction and dismissed the EEOC's action.

The Court began its analysis in *Liberty Trucking* with the recognition that Title VII does not explicitly provide the EEOC with authority to seek enforcement of conciliation agreements. *Id.* Analyzing the legislative history of the role of the 1972 amendments to Title VII and the role given to conciliation agreements in these amendments, the Court found that "conciliation remains the most important function of the EEOC." *Id.* at 1042. Given the primacy of conciliation in the Title VII scheme, the Seventh Circuit held it would undermine Congress' commitment to conciliation to deprive the EEOC of a federal forum in which to enforce its conciliation agreements. *Id.* at 1044. In an all-important footnote, the Seventh Circuit held:

> We do not reach the question of whether a distinction should be made between conciliation agreements, which are statutory creatures and which follow an EEOC investigation and determination of reasonable cause, and settlement agreements which are a device created by the EEOC to resolve complaints prior to investigation. See *E.E.O.C. v. Pierce Packing Co.*, 669 F.2d 605 (9th Cir.1982). We note, however, that our decision here turns on the voluntary nature of conciliation agreements and not upon an administrative finding of reasonable cause. Jurisdiction predicated upon an administrative finding of reasonable cause would, it appears, tend to convert the EEOC into an adjudicative administrative agency.

*Id.* at 1044 n. 7.

In its memorandum in support of its motion to dismiss, Standard Rate relies on *E.E.O.C. v. Pierce Packing Co.*, 669 F.2d 605, 608 (9th Cir.1982) for the proposition that 29 C.F.R. 1601.20(a), the regulation allowing for predetermination agreements, "does not permit court involvement predicated on breach of a settlement agreement, absent reasonable cause determination and good faith attempts at conciliation," see Defendant's Reply Mem. in Support of Motion to Dismiss at 8–9, but completely ignores the footnote in *Liberty Trucking.* The court finds this omission to be very telling. After *Liberty Trucking*, the two circuits which have addressed the question of whether a federal court has jurisdiction over suits to enforce predetermination agreements have relied on *Liberty Trucking* in holding that given the congressional emphasis on voluntary compliance, there is no relevant distinction between predetermination agreements and conciliation agreements for purposes of Title VII jurisdiction. *See Eatmon v. Bristol Steel & Iron Works, Inc.*, 769 F.2d 1503, 1512 n. 9 (11th Cir.1985) ("We are bolstered in our conviction by the fact that *Pierce* was decided prior to *Liberty Trucking* ... [and] [w]e also note that the Seventh Circuit suggested in *Liberty Trucking*, 695 F.2d at 1044 n. 7 that it too would see no relevant difference for jurisdictional purposes."); *E.E.O.C. v. Henry Beck Co.*, 729 F.2d at 305 (noting that *Pierce* was decided before *Liberty Trucking* ). The Court agrees with these two decisions and believes that based on *Liberty Trucking*, the Seventh Circuit would reach an identical conclusion.

Standard Rate suggests that although the EEOC may sue for breach of a settlement agreement in federal court, private plaintiffs should not be permitted to bring such actions. Standard Rate offers no case law to support this proposition. Although the Court has not found any Seventh Circuit authority on point, the Court agrees with the Eleventh Circuit's holding in *Eatmon* that "[a]ll of the reasons that support Title VII jurisdiction over such actions when brought by the EEOC apply with equal force to actions brought by the aggrieved employees to enforce conciliation agreements entered into by the EEOC, their employees, and themselves." 769 F.2d at 1510. *See also Brito v. Zia Co.*, 478 F.2d 1200 (10th Cir.1973) (cited with approval in *Liberty Trucking*, 695 F.2d at

1044 n. 5); *Kiper v. La. St. Bd. of Elem. Educ.*, 592 F.Supp. 1343, 1359 (M.D.La. 1984), *aff'd*, 778 F.2d 789 (5th Cir.1985); *Byrd v. Long Island Lighting Co.*, 565 F.Supp. 1455, 1461 (E.D.N.Y.1983).

Moreover, the Court holds that Sherman is not required to exhaust her administrative remedies in order to bring suit for the breach of the Settlement in federal court. The fact that "no charges were ever filed with the EEOC and there was no EEOC investigation or determination of reasonable cause do not prevent this from being an action 'brought under' Title VII." *Eatmon*, 769 F.2d at 1510–11. *See also, Brewer v. Muscle Shoals Bd. of Educ.*, 790 F.2d 1515, 1519 (11th Cir.1986) ("[a]n employee need not file an EEOC charge alleging breach of the agreement to invoke the jurisdiction of a federal court over an action arising from the breach of a settlement agreement"). Such actions are brought directly under Title VII over which federal courts have subject matter jurisdiction, *see Liberty Trucking*, 695 F.2d at 1044, and plaintiffs need not exhaust administrative remedies as a prerequisite to filing such actions. *Eatmon*, 769 F.2d at 1508, 1512 (goal of voluntary compliance and conciliation overrides requirement of EEOC participation).

■ Finally, Standard Rate's argument that Sherman should not be allowed to bring her action more than two years after the last alleged discriminatory act, her firing, amounts to an argument based on the equitable defense of laches. "The doctrine of laches should be applied to prevent a claimant from prejudicing an employer by resurrecting a stale discrimination claim after apparently acquiescing in the employer's breach of settlement." *Perdue v. Roy Stone Transfer Corp.*, 690 F.2d 1091, 1094 (4th Cir.1982). In order for laches to bar Sherman's claim, Standard Rate must show

"(1) lack of diligence by the party against whom the claim is aserted, and (2) prejudice to the party asserting the defense." *Costello v. U.S.*, 365 U.S. 265, 282, 81 S.Ct. 534, 543, 5 L.Ed.2d 551 (1961); *Cannon v. Univ. of Health Sciences/The Chicago Medical School*, 710 F.2d 351, 359 (7th Cir.1983). At this time resolution of the question of laches is premature; laches is a factual question which generally is not subject to resolution at the summary judgment stage let alone at the pleadings stage. *See Jeffries v. Chicago Transit Authority*, 770 F.2d 676, 679 (7th Cir.1985), *cert. denied*, 475 U.S. 1050, 106 S.Ct. 1273, 89 L.Ed.2d 581 (1986).[9]

For all of the above-discussed reasons, Standard Rate's motion to dismiss Count II of plaintiff's amended complaint must be denied.

### C. *Count III*

■ In Count III of her amended complaint, Sherman alleges that Standard Rate terminated her employment and committed other acts in retaliation for her filing of an action with the EEOC. Standard Rate argues that the retaliatory discharge claim in Count III must be dismissed because the charge of retaliation is a separate act of discrimination under Title VII from the underlying discrimination claim which served as the basis for Sherman's original EEOC charge. Standard Rate argues that Sherman was required to file an additional charge with the EEOC relating solely to the alleged retaliatory discharge claim and that her failure to do so and receive a "right to sue" letter requires that Count III be dismissed.

In the Seventh Circuit, the relevant test in determining whether plaintiff is required to exhaust her administrative remedies before filing a complaint which encompasses

**9.** A ruling on the defense of *laches* is also premature because plaintiff, who bears the burden of explaining her delay has not had the opportunity to do so, see *Lingenfelter v. Keystone Consolid. Indust., Inc.*, 691 F.2d 339, 340 (7th Cir. 1982), and because defendant, who must establish that it has been materially prejudiced by any unreasonable or inexcusable delay, has not made such a showing. *See Jeffries*, 770 F.2d at

680. The Court notes that Sherman's delay of over two years in bringing suit does not fall within the range of delay found to be unreasonable in EEOC cases by the Seventh Circuit. *See Cannon*, 710 F.2d at 359–60 (relying on EEOC cases, court finds that private litigant's delay of between 3 years/8 months and 5 years unreasonable).

1442

allegations outside the ambit of the predicate EEOC charge is the "scope of the charge" test. *See Steffen v. Meridian Life Ins. Co.*, 859 F.2d 534, 544 (7th Cir.1988); *Babrocky v. Jewel Food Co. & Retail Meatcutters*, 773 F.2d 857, 864 (7th Cir. 1985). Under the "scope of the charge" test, all claims of discrimination are cognizable in a civil action which are " 'like or reasonably related to the allegations of the charge and growing out of such allegations.' " *Jenkins v. Blue Cross Mutual Hospital Ins., Inc.*, 538 F.2d 164, 167 (7th Cir.1976) (*en banc*) (quoting *Danner v. Phillips Petroleum Co.*, 447 F.2d 159, 162 (5th Cir.1971)), *cert. denied*, 429 U.S. 986, 97 S.Ct. 506, 50 L.Ed.2d 598 (1976).

Sherman does not contest Standard Rate's assertion that the retaliation claim is a separate and distinguishable claim from the sexual discrimination claim alleged in her EEOC charge. Indeed, Sherman would be hardpressed to argue this point. Sherman's retaliatory discharge claim in Count III "injects an entirely new theory of liability into the case alleging unlawful activity of a much different nature" than the sexual discrimination alleged in her original EEOC charge. *Steffen*, 859 F.2d at 545. For this reason, Sherman's retaliatory discharge claim fails the "scope of the charge

test" and accordingly, must be dismissed with prejudice.[10]

 The Court's holding that Sherman's Title VII action cannot include her claim for retaliatory discharge does not implicate any ruling as to the admissibility of evidence of retaliation in her sole remaining claim for breach of the Settlement. Given that one of the terms of the Settlement was that Standard Rate agreed not to retaliate against Sherman for filing her EEOC charge, any evidence of retaliation would be highly relevant to her claim in Count II. *See Proffit v. Keycom Electronic Pub.*, 625 F.Supp. 400, 408 n. 14, 409 (N.D.Ill. 1985), *overruled on other grounds, Gilardi v. Schroeder*, 833 F.2d 1226 (7th Cir. 1987); *Garcia v. Rush Presbyterian–St. Luke's Medical Center*, 80 F.R.D. 254, 262 (N.D.Ill.1978).

## IV. CONCLUSION

The Court grants defendant's motion to dismiss Counts I and III of Sherman's amended complaint, but denies defendant's motion to dismiss with respect to Count II.

---

10. The Court's dismissal of Sherman's retaliatory discharge claim is, in essence, an order of summary judgment in favor of Standard Rate. In *Babrocky*, 773 F.2d at 863–64, the Seventh Circuit held that after *Zipes*, the requirement of scope, like the requirement of filing a timely charge, is in the nature of a condition precedent and, therefore, "the district court's decision to dismiss those parts of plaintiff's Title VII allegations supposedly not included in the EEOC charge should have resulted in partial summary judgment, not dismissal." *Id.* at 864. Similarly, the Court's dismissal of Count III should be considered as an order of partial summary judgment.

Because Sherman's retaliatory discharge claim fails to meet the "scope of the charge" requirement, her failure to exhaust her administrative remedies—in this case, her failure to file timely an additional EEOC charge and obtain a right to sue letter—are alternative grounds upon which the Court may dismiss her claim. Although *Zipes* held that the timely filing of an EEOC charge is not a jurisdictional requirement, *Zipes* did not hold that a plaintiff can

simply disregard the charge filing requirements of Title VII. *See Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 152 n. 6, 104 S.Ct. 1723, 1726 n. 6, 80 L.Ed.2d 196 (1984) ("We did not in *Zipes* declare that the [charge filing] requirement need not ever be satisfied; we merely stated it was subject to waiver and tolling."); *Berger v. Ironworkers Reinforced Rodmen*, 843 F.2d 1395, 1434 (D.C.Cir.1988); *Bennett v. Russ Berrie and Co., Inc.*, 564 F.Supp. 1576 (N.D.Ind. 1983). Sherman has not proffered any reasons which justify the use of equitable principles to toll the 300–day period from the date she was fired in which she was required to file a new EEOC charge based on the alleged retaliation. Accordingly, Sherman's Title VII claim for retaliation is time-barred. *See Baldwin*, 466 U.S. at 152, 104 S.Ct. at 1726 ("[o]ne who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence"); *Rice v. New England College*, 676 F.2d 9, 11 (1st Cir.1982) ("[i]n the absence of a recognized equitable consideration, the court cannot extend the limitations period [the 90 day period for filing after receipt of right to sue letter] by even one day").