UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 93-1954

CARPARTS DISTRIBUTION CENTER, INC., ET AL.,
Plaintiffs-Appellants,

v.

AUTOMOTIVE WHOLESALER'S ASSOCIATION
OF NEW ENGLAND, INC., ET AL.,
Defendants-Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Martin F. Loughlin, U.S. District Judge]

Before

Torruella, Circuit Judge,

Coffin, Senior Circuit Judge,

and Boudin, Circuit Judge.

James P. Reidy, with whom James Q. Shirley and Sheehan

Phinney Bass & Green Professional Association were on brief for

appellants.
Samuel A. Marcosson, Attorney, with whom James R. Neely,

Jr., Deputy General Counsel, Gwendolyn Young Reams, Associate

General Counsel and Vincent J. Blackwood, Assistant General

Counsel were on brief for the Equal Employment Opportunity
Commission, amicus curiae.
William Garza, Cary LaCheen, Herbert Semmel, Thomas

Kendricks on brief for American Civil Liberties Union, Gay and

Lesbian Advocates and Defenders and Gay Men's Health Crisis,
amici curiae.
James H. Schulte, with whom Burns, Bryant, Hinchey, Cox &

Schulte, P.A. was on brief for appellees.

October 12, 1994

-2-

TORRUELLA, Circuit Judge. Plaintiffs-appellants

Carparts Distribution Center, Inc., Daniel W. Dirsh, and Shirley

M. Senter, appeal from the district court's order dismissing

their complaint for illegal discrimination based on disability

under state and federal laws. The court granted judgment under

Fed. R. Civ. P. 12(b)(6) in favor of defendants.

I.

STANDARD OF REVIEW

Our review of dismissal under Fed. R. Civ. P. 12(b)(6)

is plenary. Roth v. United States, 952 F.2d 611, 613 (1st Cir.

1991). We accept as true all of the allegations in the complaint

and draw all reasonable inferences in favor of the plaintiffs.

Id.

II.

BACKGROUND

In May 1986, Plaintiff Ronald J. Senter ("Senter") was

diagnosed as infected with Human Immunodeficiency Virus ("HIV

positive"). In March 1991, he was diagnosed as suffering from

Acquired Immune Deficiency Syndrome ("AIDS"). He died on

January 17, 1993.

Senter was the sole shareholder, president, chief

executive director, and an employee of Carparts Distribution

Center, Inc. ("Carparts"), an automotive parts wholesale

distributor incorporated in New Hampshire.

Since 1977, Carparts has been a participant in a self-

funded medical reimbursement plan known as Automotive Wholesalers

-2-

Association of New England Health Benefit Plan ("the Plan")

offered by the defendants in this case, Automotive Wholesalers

Association of New England, Inc. ("AWANE") and its administering

trust, Automotive Wholesalers Association of New England, Inc.

Insurance Plan ("AWANE Plan"). Senter was enrolled in the Plan

since 1977. In October 1990, AWANE Plan informed members of

AWANE, including Carparts, of its intention to amend the Plan in

order to limit benefits for AIDS-related illnesses to $25,000,

effective January 1, 1991. Otherwise, lifetime benefits under

the Plan were, and are, afforded in the amount of $1 million per

eligible plan member.

On a number of occasions during and after 1989, Senter

had several serious illnesses, many of which were HIV or AIDS

related. Senter directly submitted claims for payment of his

medical treatment and medications to AWANE and the AWANE Plan

until spring or summer of 1991, when Carparts submitted the

claims on Senter's behalf because he became too sick or matters

were too complicated for him to do so.

Senter and Carparts ("plaintiffs" or "appellants")

alleged,1 that the Trustees of the Plan were aware of Senter's

condition at the time the amendments to the plan were adopted.

Plaintiffs claim that the cap on AIDS-related illnesses was

instituted by defendants with knowledge that Senter was diagnosed

1 Following Senter's death, Shirley M. Senter and Daniel W.
Dirsh were appointed co-executors for his estate. On April 1,
1993, the district court allowed the substitution of the co-
executors for Senter as plaintiffs in this action.

-3-

HIV positive, suffering from AIDS, and subject to AIDS-related

medical expenses and that the lifetime cap on AIDS related

expenses was instituted in response to Senter's illness and

related claims that he had filed during the previous several

months. According to plaintiffs, after Senter reached the

lifetime cap on AIDS related illnesses, defendants breached their

contractual obligation to provide, at a minimum, medical coverage

to Senter for non-AIDS related treatments, by failing, neglecting

or refusing to make payments for non-AIDS related matters in a

complete or consistent manner.

Plaintiffs brought this action alleging that the

lifetime cap on health benefits for individuals with AIDS,

instituted by defendants, represented illegal discrimination on

the basis of a disability. Such a discriminatory provision

allegedly rendered Carparts responsible for payments to

healthcare providers on Senter's behalf and effectively put

Carparts out of compliance with anti-discrimination laws,

subjecting Carparts to potential liability under N.H. Rev. Stat.

Ann. 354-A ("Section 354-A"), a state anti-discrimination law,

and the Americans with Disabilities Act ("the ADA"), 42 U.S.C.

12101, et seq.

The district court dismissed all of plaintiffs' claims

on July 19, 1993. This appeal followed.

III.

DISCUSSION

A. Notice of Proposed Dismissal

-4-

Plaintiffs first contend that the district court erred

in dismissing their complaint without affording them notice of

the court's intended dismissal. We agree.

Plaintiffs commenced this action in the state courts of

New Hampshire ten days before the ADA became effective. They

asserted claims under state law only. The defendants removed the

case to federal court claiming that the issues raised were

governed and preempted by the Employee Retirement Income Security

Act of 1974, as amended, 29 U.S.C. 1001, et seq. ("ERISA").

At a pretrial conference on April 15, 1993, the

defendants indicated their intention to move to dismiss the

pendent claims, and the plaintiffs moved to amend their complaint

to assert claims under the ADA. The plaintiffs' motion was

granted and they amended their complaint to include, among

others, claims alleging violations of Title I and Title III of

the ADA. 42 U.S.C 12112(a), 12182(a). The defendants filed

an objection to the amendment and the district court treated the

defendants' objection as a motion to dismiss under Fed. R. Civ.

P. 12(b)(6). The court dismissed plaintiffs claims, holding that

neither Title I nor Title III of the ADA applied to this case

because neither defendant, AWANE or AWANE Plan, was an "employer"

with respect to plaintiffs as required by Title I, and that

neither defendant was a "public accommodation" as required by

Title III.

Where no motion to dismiss has been filed, "a district

court may, in appropriate circumstances, note the inadequacy of

-5-

the complaint and, on its own initiative, dismiss the complaint.

Yet a court may not do so without at least giving plaintiffs

notice of the proposed action and affording them an opportunity

to address the issue." Literature, Inc. v. Quinn, 482 F.2d 372,

374 (1st Cir. 1973) (internal citations omitted); see also

Pavilonis v. King, 626 F.2d 1075, 1078 & n.6 (1st Cir.), cert.

denied, 449 U.S. 829 (1980).

Although AWANE filed an objection to plaintiffs' motion

to amend the complaint, and plaintiffs filed a response to

AWANE's objection, neither filing addressed the substantive

issues regarding Title I and Title III of the ADA on which the

district court based its dismissal order. The court also failed

to give plaintiffs any notice of its proposed dismissal, or any

opportunity to respond to the perceived shortcomings in their

complaint regarding their claims under Title I and Title III

prior to the court's order dismissing the case pursuant to Fed.

R. Civ. P. 12 (b)(6). The court's failure to give such notice

alone justifies reversal of this case. See Literature, 482 F.2d

at 374. We also find, however, that the court's dismissal was

erroneous as a matter of law. See id. The district court erred

by interpreting Title I and Title III of the ADA to have

excessively limited applications. Questions regarding the proper

interpretation of the ADA are sure to arise on remand.

Therefore, we feel that timely guidance is appropriate.

B. Title I of the ADA

Plaintiffs contend that the district court erred in

-6-

finding that defendants were not "covered entities" under Title I

of the ADA.

Title I of the ADA, entitled "Employment" provides:

No covered entity shall discriminate
against a qualified individual with a
disability[2] because of the disability
of such individual in regard to job
application procedures, the hiring,
advancement, or discharge of employees,
employee compensation, job training, and
other terms, conditions, and privileges
of employment.

42 U.S.C. 12112(a).

"Covered entity" is defined as "an employer, employment

agency, labor organization, or joint labor-management committee."

42 U.S.C. 12111(2).

As the district court noted, this provision "makes it

unlawful for a covered entity to discriminate on the basis of

disability against a qualified individual with a disability in

regard to, among other things, fringe benefits, available by

virtue of employment, whether or not administered by the covered

entity," see 29 C.F.R. 1630.4(f), and "[h]ealth insurance such

as that provided by the defendants is considered a fringe

benefit." Carparts Distribution Ctr. v. Automotive Wholesaler's

Ass'n, 826 F. Supp. 583, 585 (D.N.H. 1993). The district court

found, however, that because neither defendant was an employer of

Senter, neither entity qualified as a "covered entity" as defined

2 For purposes of this appeal, we assume that Senter is a
"qualified individual with a disability." We make no
determination as to whether defendants' cap on benefits in the
present case constitutes "discrimination" based on a disability.

-7-

by the ADA and therefore neither was subject to liability under

Title I of the ADA. We believe that the district court erred by

interpreting Title I of the ADA to permit suits only against

employers who discriminate with respect to the terms and

conditions of employment of their own employees.

In making our determination we look for guidance to the

Civil Rights Act of 1964, as amended, 42 U.S.C. 2000-e, et seq.

("Title VII") and cases interpreting that statute. There is no

significant difference between the definition of the term

"employer" in the two statutes. Compare 42 U.S.C. 2000e(b)

(Title VII) with 42 U.S.C. 12111(5)(A) (ADA).3 The

Interpretive Guidance on Title I of the ADA, published by the

3 Title VII provides:

The term "employer" means a person
engaged in an industry affecting commerce
who has fifteen or more employees for
each working day in each of twenty or
more calendar weeks in the current or
preceding calendar year, and any agent
of such a person . . . except that during
the first year after March 24, 1972,
persons having fewer than twenty-five
employees (and their agents) shall not be
considered employers.

42 U.S.C. 2000(e)(b).

The term "employer" is defined in the ADA as:

A person engaged in an industry affecting
commerce who has 25 or more employees for
each working day in each of 20 or more
calendar weeks in the current or
preceding calendar year, and any agent of
such person.

42 U.S.C. 12111(5)(A).

-8-

Equal Employment Opportunity Commission ("EEOC"), establishes

that the term "employer" is "to be given the same meaning under

the ADA that [it is] given under Title VII."4 56 Fed. Reg.

35,740 (1991) (to be codified at 29 C.F.R. 1630, App.)

(Interpretive Guidance on 1630.2(a)-(f)). See Meritor Savings

Bank, FSB v. Vinson, 477 U.S. 57, 65 (1986) (EEOC's interpretive

guidelines "while not controlling upon the courts by reason of

their authority, do constitute a body of experience and informed

judgment to which courts and litigants may properly resort for

guidance") (internal quotations and citation omitted).

Additionally, Title I of the ADA provides that the "powers,

remedies and procedures" of Title VII shall apply to claims of

discrimination under Title I of the ADA. 42 U.S.C. 12117(a).

The issue before us is not whether defendants were

employers of Senter within the common sense of the word, but

whether they can be considered "employers" for purposes of Title

I of the ADA and therefore subject to liability for

discriminatorily denying employment benefits to Senter. If under

any legal theory defendants could be considered "employers" for

purposes of Title I, then plaintiffs should be given an

opportunity to amend their complaint to allege the facts

establishing the application of that theory to the present case.

Plaintiffs have argued, and we agree, that defendants could be

considered Senter's "employers," and therefore may be subject to

4 The EEOC is the agency entrusted by Congress to administer and
enforce the employment provisions of the ADA. 42 U.S.C.
12116-17.

-9-

liability under Title I, under any one of at least three

theories.

First, defendants would be "employers" if they

functioned as Senter's "employer" with respect to his employee

health care coverage, that is, if they exercised control over an

important aspect of his employment. See Spirt v. Teachers Ins. &

Annuity Ass'n, 691 F.2d 1054, 1063 (2d Cir. 1982), vacated and

rem'd on other grounds, 463 U.S. 1223 (1983), reinstated and

modified on other grounds, 735 F.2d 23 (2d Cir. 1984), cert.

denied, 469 U.S. 881 (1984) (interpreting the term "employer"

under Title VII) ("term 'employer,' . . . is sufficiently broad

to encompass any party who significantly affects access of any

individual to employment opportunities, regardless of whether

that party may technically be described as an 'employer' of an

aggrieved individual as that term has generally been defined at

common law.") (internal quotation and citations omitted); Barone

v. Hackett, 602 F. Supp. 481, 483 (D.R.I. 1984) (court found

director of State agency that administered disability benefits

for State employees liable under Title VII even though agency did

not employ the plaintiffs, stating "Title VII liability is not

limited to the entity which issues pay checks to the employee");

Baranek v. Kelly, 630 F. Supp. 1107, 1113 (D. Mass. 1986) (state

home care agency that had "the 'means and authority' to control

discriminatory employment practices" of regional employers was an

"employer" under Title VII because it "exercise[d] significant

control over an employment situation").

-10-

If AWANE and AWANE Plan exist solely for the purpose of

enabling entities such as Carparts to delegate their

responsibility to provide health insurance for their employees,

they are so intertwined with those entities that they must be

deemed an "employer" for purposes of Title I of the ADA. See

Spirt, 691 F.2d at 1063 (finding that an annuity association and

an equities fund "which exist solely for the purpose of enabling

universities to delegate their responsibility to provide

retirement benefits for their employees, are so closely

intertwined with those universities . . . that they must be

deemed an 'employer' for purposes of Title VII"). Relevant to

this inquiry is whether defendants had the authority to determine

the level of benefits that would be provided to Carparts'

employees and whether alternative health plans were available to

employees through their employment with Carparts. If defendants

had the authority to determine the level of benefits, they would

be acting as an employer who exercises control over this aspect

of the employment relationship.5 Also relevant to this

determination is whether Carparts shares in the administrative

responsibilities that result from its employees' participation in

AWANE and AWANE Plan. See id. Such sharing of responsibilities

would tend to suggest that Carparts and defendants are so

5 In contrast, insurance companies which merely sell a product
to an employer but do not exercise control over the level of
benefits provided to employees could not be deemed "employers"
under this rationale. Where alternative health plans are
available, it could not be said that defendants controlled this
aspect of the employment relationship and therefore, they would
not be deemed "employers" under this rationale.

-11-

intertwined as to be acting together as an "employer" with

respect to health care benefits. Only if the litigation is

allowed to proceed can plaintiffs develop a record to answer

these questions. For purposes of Fed. R. Civ. P. 12(b)(6), the

possibility of a claim is enough to defeat dismissal.

Second, even if the defendants did not have authority

to determine the level of benefits, and even if Carparts retained

the right to control the manner in which the Plan administered

these benefits, defendants would still be rendered "employers" of

Senter if defendants are "agents" of a "covered entity,"6 who

act on behalf of the entity in the matter of providing and

administering employee health benefits.7 Just as "delegation of

responsibility for employee benefits cannot insulate a

discriminatory [retirement benefits] plan from attack under Title

VII," Spirt, 691 F.2d at 1063, neither can it insulate a

discriminatory health benefits plan under Title I of the ADA.

See id. (recognizing that "exempting plans not actually

administered by an employer would seriously impair the

effectiveness of Title VII").

Third, under 102(a) of the ADA, an employer may not

discriminate against a "qualified individual with a disability

. . . in regard to" specified enumerated aspects of employment.

6 The district court found that Carparts is a "covered entity."

7 Like Title VII, Title I of the ADA applies to "any agent" of a
"covered employer." 42 U.S.C. 12111(5)(A) (ADA); Los Angeles

Dept. of Water & Power v. Manhart, 435 U.S. 702, 718 n.33, (1978)

(Title VII).

-12-

42 U.S.C. 12112(a). A number of cases, although not in this

circuit, have interpreted analogous provisions of Title VII to

apply to actions taken by a defendant against a plaintiff who is

not technically an employee of that employer. For example, in

Sibley Memorial Hospital v. Wilson, 488 F.2d 1338, 1341 (D.C.

Cir. 1973), the court applied Title VII to a hospital which

refused to assign a private male nurse to female patients even

though the nurse was technically not an employee of the hospital

but was an employee of a particular patient. We do not want to

be understood as holding at this time that there is automatic

coverage wherever one who is an employer of a requisite number of

persons takes some action that affects the employee of another

entity; a great deal may depend on circumstances. At the same

time, we think it premature to rule out the possibility that when

additional facts are developed, a claim under Title I analogous

to that in Sibley might be made out. See also Christopher v.

Stouder Memorial Hospital, 936 F.2d 870, 875 (6th Cir. 1991),

cert. denied, 112 S. Ct. 658 (U.S. 1991) (interpreting Title VII,

court stated that "a plaintiff is protected if the defendant is

one who significantly affects access of any individual to

employment opportunities") (internal quotations and citations

omitted); Doe on behalf of Doe v. St. Joseph's Hosp., 788 F.2d

411, 422 (7th Cir. 1986) (argument that plaintiff is not an

employee of defendant employer is not dispositive under Title VII

because "[t]here are no indications that [language proscribing

discrimination by an employer against] 'any individual' should be

-13-

read to mean only an employee of an employer").

Plaintiffs alleged that defendants were "covered

entities" for purposes of the ADA. Because the district court

prematurely dismissed plaintiffs' complaint without affording

them an opportunity to address the issues upon which the district

court relied for its dismissal, the record is not sufficiently

complete for us to determine whether defendants were Senter's

employer for purposes of Title I. On remand, plaintiffs should

be given an opportunity to address this issue so that the

district court can make a determination as to defendants' Title I

status.8

C. Title III of the ADA

Title III of the ADA provides:

(a). General Rule. No individual shall
General Rule
be discriminated against on the basis of
disability in the full and equal
enjoyment of the goods, services,
facilities, privileges, advantages, or
accommodations of any place of public
accommodation by any person who owns,
leases (or leases to), or operates a
place of public accommodation.

42 U.S.C. 12182(a).

Prohibited discrimination under Title III includes the

denial, on the basis of disability, of the opportunity to

benefit from the goods, services, privileges, advantages or

8 We recognize defendants' claim that a number of the factual
allegations advanced in the briefs supporting the appeal are not
alleged in the complaint. Our view, however, is that in the
present procedural circumstances the opportunity should have been
given to flesh out the complaint with more detailed allegations.
If on remand the plaintiffs are unwilling or unable to do so,
that will be a quite different matter.

-14-

accommodations of an entity. 42 U.S.C. 12182(b); 28 C.F.R.

36.202.

The district court interpreted the term "public

accommodation" as "being limited to actual physical structures

with definite physical boundaries which a person physically

enters for the purpose of utilizing the facilities or obtaining

services therein." Because the court found that neither of the

defendants possessed those characteristics, it dismissed Senter's

Title III claim. Plaintiffs contend that the district court

erred in finding that Title III of the ADA did not apply to

defendants because they were not places of "public accommodation"

within the meaning of the Act.

Whether establishments of "public accommodation" are

limited to actual physical structures is a question of first

impression in this Circuit. For the following reasons we find

that they are not so limited and remand to the district court to

allow plaintiffs the opportunity to adduce further evidence

supporting their view that the defendants are places of "public

accommodation" within the meaning of Title III of the ADA.

We begin our analysis by looking at the language of the

statute. Sierra Club v. Larson, 2 F.3d 462, 467 (1993). The

definition of "public accommodation" states that "[t]he following

private entities are considered public accommodations for

purposes of this subchapter, if the operations of such entities

affect commerce-" and then provides an illustrative list which

includes a "travel service," a "shoe repair service," an "office

-15-

of an accountant, or lawyer," an "insurance office," a

"professional office of a healthcare provider," and "other

service establishment[s]". 42 U.S.C. 12181(7)(f).9 The plain

meaning of the terms do not require "public accommodations" to

have physical structures for persons to enter. Even if the

meaning of "public accommodation" is not plain, it is, at worst,

ambiguous. This ambiguity, considered together with agency

regulations and public policy concerns, persuades us that the

phrase is not limited to actual physical structures.

By including "travel service" among the list of

services considered "public accommodations," Congress clearly

contemplated that "service establishments" include providers of

services which do not require a person to physically enter an

actual physical structure. Many travel services conduct business

by telephone or correspondence without requiring their customers

to enter an office in order to obtain their services. Likewise,

one can easily imagine the existence of other service

establishments conducting business by mail and phone without

providing facilities for their customers to enter in order to

utilize their services. It would be irrational to conclude that

persons who enter an office to purchase services are protected by

the ADA, but persons who purchase the same services over the

telephone or by mail are not. Congress could not have intended

such an absurd result.

9 The defendants are private entities that operate a self-
insured plan. They have not disputed that their operation
affects commerce.

-16-

Our interpretation is also consistent with the

legislative history of the ADA. The purpose of the ADA is to

"invoke the sweep of Congressional authority . . . in order to

address the major areas of discrimination faced day-to-day by

people with disabilities," 42 U.S.C 12101(b). The ADA was

enacted to "provide a clear and comprehensive national mandate

for the elimination of discrimination against individuals with

disabilities." 42 U.S.C. 12101(b)(1). The purpose of Title

III of the ADA, is "to bring individuals with disabilities into

the economic and social mainstream of American life . . . in a

clear, balanced, and reasonable manner." H.R. Rep. No. 485,

101st Cong., 2d Sess., pt. 2, at 99 (1990), reprinted in 1990

U.S.C.C.A.N. 303, 381. In drafting Title III, Congress intended

that people with disabilities have equal access to the array of

goods and services offered by private establishments and made

available to those who do not have disabilities. S. Rep. No.

116, 101st Cong., 1st Sess. at 58 (1989).

Beyond our threshold determination, we must tread with

care. Some of the critical language of Title III is both general

and ambiguous--for example, a key provision concerns the denial

based on a disability "of the opportunity of the individual or

class to participate in or benefit from the goods, services,

facilities, privileges, advantages, or accommodations of an

entity." 42 U.S.C. 12182(b)(1)(A)(1). As a matter of bare

language, one could spend some time arguing about whether this is

intended merely to provide access to whatever product or service

-17-

the subject entity may offer, or is intended in addition to shape

and control which products and services may be offered. Indeed,

there may be areas in which a sharp distinction between these two

concepts is illusory.

One who simply reads the Committee Report describing

the operations of Title III could easily come away with the

impression that it is primarily concerned with access in the

sense of either physical access to a place of public

accommodation or something analogous, such as access provided

through telephone lines, messengers or some other medium. At the

same time, there is nothing in that history that explicitly

precludes an extension of the statute to the substance of what is

being offered. Suppose, for example, a company that makes and

distributes tools provides easy access to its retail outlets for

persons with every kind of disability, but declines to make even

minor adjustments in the design of the tools to make them usable

by persons with only quite limited disabilities.

The statute's treatment of insurance is a good example

of these ambiguities. On the one hand, the ADA carves out a safe

harbor of sorts for anyone who is "an insurer, hospital, or

medical service company, health maintenance organization, or any

agent, or entity that administers benefit plans, or similar

organizations . . . ." 42 U.S.C. 12201(c)(1). See also id. at

(c)(2), (3). One might initially suppose that this is because

Title III would otherwise cover the substance of the insurance

plans. However, there is some indication in the legislative

-18-

history that the industry received this exemption not because its

policies would otherwise be substantively regulated under Title

III, but because "there is some uncertainty over the possible

interpretations of the language contained in titles I, II and III

as it applies to insurance . . . ." See S. Rep. No. 116, 101

Cong., 1st Sess. at 84 (1989).

We think that at this stage it is unwise to go beyond

the possibility that the plaintiff may be able to develop some

kind of claim under Title III even though this may be a less

promising vehicle in the present case than Title I. Not only the

facts but, as we have already noted, even the factual allegations

are quite sparse. In addition, because of our resolution of the

Title I claims, this case must be remanded and is subject to

further proceedings regardless of whether Title III remains in

the case. While it is tempting to seek to provide further

guidance, the nature of the record and the way the issues are

addressed in the appellate briefs make it imprudent to do so.

Neither Title III nor its implementing regulations make

any mention of physical boundaries or physical entry. Many goods

and services are sold over the telephone or by mail with

customers never physically entering the premises of a commercial

entity to purchase the goods or services. To exclude this broad

category of businesses from the reach of Title III and limit the

application of Title III to physical structures which persons

must enter to obtain goods and services would run afoul of the

purposes of the ADA and would severely frustrate Congress's

-19-

intent that individuals with disabilities fully enjoy the goods,

services, privileges and advantages, available indiscriminately

to other members of the general public.

IV.

MISCELLANEOUS

Plaintiffs also alleged a violation of N.H. Rev. Stat.

Ann. 354(A), referred to as the "Law Against Discrimination,"

and of the Civil Rights Act of 1965, 42 U.S.C. 1985(3).10

Plaintiffs claimed in the district court that Section 354-A

serves as an enforcement vehicle for the ADA and for that reason

should not be preempted by ERISA, 29 U.S.C. 1144. Because the

district court found that the ADA did not apply to defendants, it

reasoned that no disruption in the enforcement of the ADA would

result by holding that Section 354-A is preempted. The court

then found Section 354-A preempted by ERISA with respect to

10 Plaintiffs claimed that Senter, being afflicted with AIDS,
was a member of a discrete and insular minority deserving of
protected class status under 42 U.S.C. 1985(3). Plaintiffs'
Section 1985 claim alleged that defendants conspired to
discriminate against Senter through the institution of a lifetime
cap on AIDS-related medical benefits.

The district court noted that under section 1985(3) "[t]here
must be some racial, or perhaps otherwise class-based,
invidiously discriminatory animus behind the conspirators'
action" and that appellants "must identify a source of
congressional power to reach the private conspiracy alleged. . .
." Carparts Distribution Ctr., 826 F. Supp. at 587 (internal

quotations and citations omitted).

Because the district court ruled that defendants were not
protected by either the employment provisions or the public
accommodation provisions of the ADA, it further found that
appellants failed to identify a source of congressional power to
reach the private conspiracy they alleged and therefore,
dismissed their complaint.

-20-

plaintiffs' cause of action.

The district court's decision to dismiss these claims

was based primarily on its finding that neither the employment

provisions nor the public accommodation provisions of the ADA

applied to defendants. Because we find that the district court

erred in dismissing plaintiffs' ADA claims, we vacate its order

dismissing plaintiffs Section 354-A claim and 42 U.S.C. 1985

and remand these claims to the district court for reconsideration

in light of this opinion.

V.

CONCLUSION

Because the district court dismissed plaintiffs'

complaint without providing notice of its intended dismissal and

erred in interpreting the term "employer" under Title I of the

ADA and in concluding that defendants were not "public

accommodations" under Title III, we hold that the district court

erred in dismissing plaintiffs' complaint.

We vacate the district court's order dismissing

plaintiffs' ADA claims and further order that plaintiffs' claims

under Section 354-A and 42 U.S.C. 1985 claim be reviewed and

reinstated. We remand for proceedings consistent with this

opinion.

-21-